(849 P.2d 1004)

No. 68,430

JEFFREY MORROW, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed April 9, 1993.

*Debra J. Wilson*, of Patton & Kerbs, of Dodge City, for appellant.

*Ricklin R. Pierce*, county attorney, *Paula Sue Greathouse*, assistant county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before PIERRON, P.J., RULON, J., and RUSSELL D. CANADAY, District Judge, assigned.

PIERRON, J.: Jeffrey Morrow appeals the dismissal of his K.S.A. 60-1507 motion for post-conviction relief, based on ineffective assistance of counsel during direct appeal. We reverse the dismissal and remand the motion for hearing.

Morrow was convicted by jury trial of two counts of arson (K.S.A. 21-3718) on May 13, 1991. Throughout the trial he was

represented by retained counsel Gerald Schultz and Gail Jensen. He was sentenced on July 26, 1991, to two concurrent terms of 3-5 years. On application for probation from confinement, the trial court ordered two years of community corrections and three years' probation.

A direct appeal was filed July 26, 1991, by Morrow's retained counsel. The case was docketed and a request for transcript of trial was filed on August 19, 1991. The demand for estimated cost of the transcript was $150 for the sentencing hearing, and $3,000 for the trial transcript. Payment was not made.

An order to show cause was issued September 9, 1991, to show why the appeal should not be dismissed for failure to advance payment for the cost of the transcripts. Morrow replied with a motion through his retained attorneys requesting the State Board of Indigents' Defense Services pay the cost of the transcript, claiming in the motion that he was unable to accumulate sufficient funds to pay the demand.

The motion was deemed a motion to waive transcript costs and was denied by the Court of Appeals on September 26, 1991. The appeal was therefore dismissed for failure to pay the reporters. Morrow filed a motion to reinstate his appeal through his retained counsel, asking the court to find him indigent for purposes of preparation cost of the transcript, and requesting that he be allowed to repay the indigent services on an installment basis. This motion was denied by the court on October 14, 1991.

Morrow and his counsel then returned to the district court requesting a transcript through the Indigents' Defense Services with repayment by Morrow in installments. Since the appeal was dismissed (and not remanded for an indigency hearing), the district court had no authority to order a transcript and had to dismiss the motion.

A petition for review to the Kansas Supreme Court, also filed by Morrow's retained counsel, was denied on December 17, 1991, and a motion for rehearing on that motion was also summarily denied on February 6, 1992. Attached to the motion for rehearing was an affidavit signed by Morrow stating he did not have and had not had $3,000 to pay the estimated cost of the transcript in one lump sum.

Morrow also sought habeas corpus relief in federal district court without success.

The current K.S.A. 60-1507 motion for habeas corpus relief was filed in Finney County District Court on June 15, 1992, by retained counsel Debra J. Wilson. This motion is based upon ineffective assistance of counsel on the direct appeal. There was no hearing on the motion. The district court denied the motion on June 18, 1992, finding that the right to an appeal is not guaranteed; there were no indications, other than conclusory allegations, that Morrow was indigent; and dispositive of the motion was the fact that the assertions and arguments were in essence a collateral attack on the decisions of the Kansas appellate courts. Subsequently, the current appeal was filed July 14, 1992.

The first issue to be addressed is whether Judge Handy had the authority and jurisdiction to enter an order dismissing petitioner's K.S.A. 60-1507 motion.

Morrow contends the terms "sentencing court" and "trial court" in Rule 183 (1992 Kan. Ct. R. Annot. 143) refer to the specific judge who conducted the trial and sentencing. However, it appears the terms "sentencing court" and "trial court" in Rule 183 are general terms used to refer to the district court that has jurisdiction of the case.

"Interpretation of statutes is a question of law. The function of the court is to interpret the statutes, giving the statutes the effect intended by the legislature. [Citation omitted.]

" 'As a general rule, statutes are construed to avoid unreasonable results. [Citation omitted.] There is a presumption that the legislature does not intend to enact useless or meaningless legislation. [Citations omitted.]

" 'A construction of a statute should be avoided which would render the application of a statute impracticable or inconvenient, or which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act." [Citations omitted.]

" 'In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' [Citation omitted.]" *Todd v. Kelly*, 251 Kan. 512, 515-16, 837 P.2d 381 (1992).

The Kansas Supreme Court has said "court" will be construed to mean "judge" and vice versa wherever either construction is necessary to carry into effect the obvious intent of the legislature,

and the terms "court," "judge of the court," and "district court" are often used interchangeably by the legislature. *Sartin v. Snell*, 87 Kan. 485, 491, 125 Pac. 47 (1912). In K.S.A. 60-1507 and Rule 183, the phrases "sentencing court" and "trial court" refer to the district court, not a specific judge.

"While the meaning of the term 'court' will vary with the context in which it is used, generally, a court is a body in the government to which the public administration of justice is delegated, being a tribunal officially assembled under authority of law, at the appropriate time and place, for the administration of justice, through which the state enforces its sovereign rights and powers, and consisting in its jurisdiction and functions and not its title or name.

"The court exists as a forum to hear and resolve suits and controversies by parties who have invoked its authority. Other definitions embodying the same ideas in different phraseology are to be found in the cases.

"Time, place, and an authorized officer are essential constituents of the organization of a court; that is to say, in order to constitute a court a duly authorized officer must be present at the time and place appointed by law.

"The words 'judge' and 'court' are frequently used as convertible terms, but they are not strictly synonymous, and a judge alone does not necessarily constitute a court, and has been described as merely an officer or member of the court, for, while the judge is an indispensable part, he is only a part of the court." 21 C.J.S., Courts § 2.

Therefore, while a judge may be referred to as "the court," the court is not referred to as "the judge." Interpreting the term "court" to mean "judge" is not a reasonable interpretation and is one which will lead to impractical and troublesome results when a particular judge retires, dies, or goes on vacation.

The clear intent of the legislature is to vest the full authority of the district court in each judge of that district, making it immaterial which judge decides any particular case in that district. K.S.A. 20-302 states: "The district judge provided for in the Kansas constitution shall have and exercise the full judicial power and authority of a district court."

K.S.A. 20-330 further explains:

"Each of the district judges in judicial districts having more than one district judge shall have all the rights, powers and authority throughout said district possessed by district judges, the same as if each judge was the sole judge of such district, and such powers, rights and authority may be exercised by each of said district judges in the same or different counties in their district at the same time."

Furthermore, K.S.A. 60-104 notes that the words "court" and "judge" may be used interchangeably in that chapter, indicating the loose manner in which the legislature refers to the district court. The term "court" in chapter 60 does not refer to a specific judge. Kansas is divided into judicial districts, and in each district a "court" is established by statute. The clear intent of the legislature is that its use of either of these terms refers to the "district court" having jurisdiction. Judge Handy had the full power and authority of a Finney County District Judge and, therefore, had district court jurisdiction to hear the K.S.A. 60-1507 motion.

An example of the legislature's intent on this issue is found in *Williams v. State*, 203 Kan. 246, 452 P.2d 856 (1969). There, the appellant filed a K.S.A. 60-1507 motion in the district court of Shawnee County. However, it was the district court of Johnson County which had imposed the sentence he was serving. The Kansas Supreme Court said: "The statute authorizes a prisoner in custody under sentence to move *the court which imposed the sentence* to vacate, set aside, or correct the sentence. It is difficult to see how this could be stated more clearly." 203 Kan. at 247.

In the instant case, Morrow takes the above quote out of context, attempting to make "court" mean "judge." However, the Supreme Court simply meant that Williams' motion should have been filed in Johnson County District Court, not Shawnee County District Court. "The appellant is a prisoner in custody under sentence. The court which imposed the sentence is the District Court of Johnson County. If the sentence he is serving is to be corrected such proceeding must be filed in that court." 203 Kan. at 247.

Judge Handy had the authority and jurisdiction to entertain the K.S.A. 60-1507 motion.

The second issue to be addressed is whether the court erred in finding that the motion should be dismissed on the grounds that the petitioner was not asserting a constitutional right.

The court made the following finding in its review of Morrow's K.S.A. 60-1507 petition: "The right to appeal asserted by the petitioner is not a right granted or guaranteed either by the Kansas Constitution or the United States Constitution. *Ware v.*

*State,* 198 Kan. 523; *Collins v. State,* 210 Kan. 577." This statement is erroneous.

"The dismissal of a criminal defendant's *direct appeal* violates the defendant's due process rights when the dismissal is the result of ineffective assistance of counsel. A criminal defendant pursuing a direct appeal from his or her conviction has not only a right to counsel in the pursuit of that appeal, but also a right to effective assistance of counsel." *Robinson v. State,* 13 Kan. App. 2d 244, Syl. ¶ 3, 767 P.2d 851, *rev. denied* 244 Kan. 738 (1989).

This error appears harmless, however, because the statement was dicta. Judge Handy disposed of the motion based on it being a collateral attack on the earlier Court of Appeals decision over which the district court had no jurisdiction.

The next issue to be addressed is whether the court erred in finding, without an evidentiary hearing, that had an appropriate motion pursuant to K.S.A. 22-4509 been filed the request for a transcript would have been denied.

"A person accused of crime has an obligation to hire his own counsel if financially able to do so, and if he fails or refuses to use his own assets and income for such purpose he may be considered to have waived his right to counsel intentionally, provided these circumstances are spread on the record. If a defendant's finances and income are not sufficient to pay for the entire cost of an adequate defense, the court may find him partially indigent and require partial payment or payments from him to be made toward the cost of a defense before appointing counsel as provided in the aid to indigent defendant statutes, K.S.A. 22-4501 *et seq.*, as amended." *State v. Salem,* 230 Kan. 341, 346-47, 634 P.2d 1109 (1981).

K.A.R. 105-4-1 sets out the rules for determination of eligibility. It is the responsibility of a defendant to make an application for legal representation at State expense by filing an affidavit of indigency based upon the factors listed in the regulation. This was never done. Partial indigency can be found under K.A.R. 105-4-5, but an affidavit is still required.

From a reading of the regulations, it is clear a defendant cannot pick what he wants to pay for and what he wants the State to pay for, which is what Morrow, through his retained counsel, attempted to do. To declare partial indigency, a defendant is required to file an affidavit. The court then determines the sum the defendant is to pay, which sum is not more than the amount

expended by the State Board of Indigents' Defense Services on behalf of the defendant. K.A.R. 105-4-5(b).

Procedures for obtaining transcripts necessary for indigent defendants are established by K.A.R. 105-8-1. "When an attorney appointed to represent an indigent defendant at trial determines that a transcript or partial transcript of the trial will be necessary to prosecute an appeal, the attorney shall request a court order for the transcript." K.A.R. 105-8-1. It is clear that the regulation contemplates that the attorney be appointed under factors listed in K.A.R. 105-4-1.

It appears from the record that trial counsel may not have been fully aware of the regulations governing operation and access to services of the State Board of Indigents' Defense Services. If Morrow were truly indigent at the time transcript costs were demanded, he should have filed an affidavit of indigence with the district court. The court would have made a determination of indigence, partial indigence, or no indigence. Upon a determination of full or partial indigence, the court would have appointed the Appellate Defender to the appeal and determined how much, if anything, Morrow would have to pay to the clerk of the court as partial payment or reimbursement. The transcript would have been ordered by the court on motion of the court-appointed attorney, and the direct appeal would have proceeded on the merits.

Counsel should have been aware of the proper procedures outlined in the regulations. The district court below should have held an evidentiary hearing to determine whether the course of action chosen by Morrow and his counsel during direct appeal was a tactical or strategic choice, or the result of a lack of understanding of the regulations. The question is not whether Morrow would have succeeded with his claim of indigency. The question is why his attorneys did not have him file a proper affidavit in accordance with the regulations. If he was not indigent and counsel was acting under Morrow's instructions in an attempt to save costs, then the appeal was properly dismissed. But this will have to be determined in an evidentiary hearing to ensure it was not ineffective assistance of counsel.

Counsel for Morrow should have known that an indigent defendant cannot retain counsel of his own choosing and then ask

for the State to pay expenses. Several options were available. If indeed Morrow was indigent, then retained counsel should have withdrawn and allowed Morrow to proceed with legal services provided by the State. If they were proceeding pro bono, counsel should have paid the estimated cost of the transcript if they deemed the transcript necessary. Or counsel could have paid the transcript costs and worked out an installment plan with the client. But the motions filed by counsel indicate Morrow was paying for counsel and suggest a lack of understanding of the indigent defense process.

Morrow's direct appeal was dismissed for failure to pay the reporters. If Morrow did not follow the proper path to declare indigency because his counsel did not inform him of the regulations, then clearly he was prejudiced to the extent that his attorneys' performance cost him the right to be heard on the merits of his appeal. The district court should hold an evidentiary hearing to determine if Morrow knowingly chose the path taken, or if his counsel did not inform him of the requirements of K.A.R. 105-4-1.

The next issue is whether the court erred in finding the present motion is a collateral attack on the decisions of the Kansas appellate courts.

The present motion is not a collateral attack on the decision of the court. The court made the correct decision based on the record. This K.S.A. 60-1507 motion is an attack on the effectiveness of the trial counsel during the direct appeal. An affidavit of indigence was never submitted to the court. The court was correct in determining that a defendant with private counsel does not have a right to a waiver of the transcript costs. The question is whether counsel on the direct appeal knew of or followed the correct procedures to protect Morrow's rights and whether Morrow was informed of the regulation requirements.

Finally, we must determine if Morrow is entitled to a new trial or reinstatement of his appeal pursuant to K.S.A. 60-1507.

There are not enough facts present in the record to determine if Morrow's counsel informed him of the regulations governing indigent defense services or why they followed the path taken. Morrow has alleged that his counsel's actions on direct appeal cost him a hearing on the merits. There is evidence in the record

to support this contention. This case must be remanded to the district court for an evidentiary hearing to determine if Morrow was fully informed and whether counsel were operating at Morrow's direction after fully informing him on the regulations governing indigent services. It should be determined why a proper affidavit of indigency in accordance with K.A.R. 105-4-1 has never been filed.

If it is determined at the evidentiary hearing that counsel were ineffective in informing Morrow of the procedures to declare indigency and did not take the proper steps to preserve his appeal, the district court should determine Morrow's indigency status at that time. If appropriate, the court should reinstate the direct appeal and order preparation of the transcript. General direction on these matters can be found in *State v. Griffen*, 241 Kan. 68, 734 P.2d 1089 (1987), and *Sullivan v. State*, 222 Kan. 222, 564 P.2d 455 (1977).

Reversed and remanded.