IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,982

BRADLEY E. AMBROSIER, CHIEF JUDGE,
KANSAS 26TH JUDICIAL DISTRICT;
LINDA P. GILMORE, DISTRICT JUDGE; AND
CLINTON B. PETERSON, DISTRICT JUDGE,
*Petitioners*,

v.

SAM BROWNBACK, GOVERNOR OF THE STATE OF KANSAS,
*Respondent*.

SYLLABUS BY THE COURT

The 90-day time limit for the governor's appointment of a district magistrate judge under K.S.A. 2015 Supp. 25-312a is directory rather than mandatory. It thus outlines a discretionary duty not subject to mandamus.

Original action in mandamus. Mandamus denied. Opinion filed July 29, 2016.

*Pedro L. Irigonegaray* and *Elizabeth R. Herbert*, of Irigonegaray & Associates, of Topeka, were on the petition for petitioners.

*Brant M. Laue*, of the office of the Governor, was on the response for respondent.

The opinion of the court was delivered by

BEIER, J.: This original mandamus action brought by the chief judge and two district court judges of the 26th Judicial District of Kansas against Governor Sam Brownback asks this court to compel the governor to appoint an interim district magistrate judge immediately under the authority of K.S.A. 2015 Supp. 25-312a.

1

We hold that a 90-day time limit set out in the statute is directory rather than mandatory under our precedent. This means that the timing of the governor's appointment is discretionary rather than ministerial. Mandamus cannot be invoked to compel a discretionary act. The governor may therefore, consistent with his stated intention, wait for the result of the primary election on August 2, 2016, before he appoints the magistrate judge sought by petitioners.

FACTUAL AND PROCEDURAL BACKGROUND

District Magistrate Judge Tommy B. Webb was one of five magistrates in the 26th Judicial District until his retirement on February 19, 2016. The governor received statutorily required notice of Judge Webb's planned departure from the bench on February 5, 2016. See K.S.A. 2015 Supp. 25-312a (clerk to provide notice of vacancy).

The governor informed Chief Judge Bradley E. Ambrosier that day that the governor was accepting applications to fill the vacancy and that an interim magistrate judge would be appointed within the 90-day period prescribed in K.S.A. 2015 Supp. 25-312a.

After receiving applications, the governor wrote a letter to the applicants dated May 25, 2016, *i.e.*, after expiration of the 90 days. The letter stated:

> "This is to inform you that I have decided not to make an appointment to the position at this time. Instead, I will defer to the voters of Haskell County, who will have the opportunity to vote on the position in the August 2nd primary election.
>
> "The filing deadline to participate in the election for this position is June 1."

2

Counsel for petitioners contacted the governor's office on June 13, 2016, and the governor's office confirmed the governor's intention to "revisit" the vacancy after the primary election.

Chief Judge Ambrosier, District Judge Linda P. Gilmore, and District Judge Clinton B. Peterson filed this petition for writ of mandamus on June 15, 2016. At the time, four Republican candidates had filed for election to the vacant magistrate judge position. Those candidates will be on the ballot in the primary election on August 2.

The petition specifically seeks a writ requiring the governor to "immediately appoint an interim district magistrate judge for Haskell County." Petitioners allege the governor "has failed, and in fact refused, to appoint a successor district magistrate judge, in violation of [his] duty" under K.S.A. 2015 Supp. 25-312a, which states that "[a]ny appointment made by the governor . . . shall be made within 90 days following receipt of notice from the clerk of the supreme court." The petitioners also seek reimbursement of their reasonable attorney fees.

This court ordered the governor to respond to the petition, which he did on July 11, 2016. The governor advances four arguments on the merits:  (1) the 90-day time limit is directory rather than mandatory; (2) his general appointment duty is discretionary rather than ministerial; (3) the relief sought by petitioners would violate the separation of powers; and (4) dismissal is appropriate under the doctrine of constitutional avoidance.

DISCUSSION

Because, as detailed below, we decide this case in the governor's favor on the basis of his first argument, we need not reach, and express no opinion on the validity of, his

3

remaining arguments. Petitioners' request for attorney fees is rendered moot, and we will not address it.

Before turning to the merits of the governor's first argument, we observe that the parties do not appear to contest the advisability of this court's exercise of discretionary concurrent jurisdiction in this case or the petitioners' standing to bring this action. Given this lack of controversy, we touch upon these two preliminary considerations only briefly. See *Peterson v. Ferrell*, 302 Kan. 99, 102-03, 349 P.3d 1269 (2015) (subject matter jurisdiction, including component of standing, may be raised at any time, on court's own initiative).

Article 3, § 3 of the Kansas Constitution grants original jurisdiction in proceedings in mandamus to the Supreme Court. This jurisdiction is discretionary and concurrent; the writ also may be sought in lower courts. See *State v. Becker*, 264 Kan. 804, 807, 958 P.2d 627 (1998); see also K.S.A. 60-801 *et seq.*; *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, 26, 643 P.2d 87 (1982). To support an original action in this court, a petitioner is required to state "the reason why the action is brought in the appellate court instead of in the district court." Kansas Supreme Court Rule 9.01(b) (2015 Kan. Ct. R. Annot. 88); see *Mobil Oil Corporation v. McHenry*, 200 Kan. 211, 242, 436 P.2d 982 (1968). Petitioners have done so here. They assert that the delay inherent in beginning this litigation in district court and the statewide importance of the petition's subject matter justify its filing in the Supreme Court rather than in Shawnee County District Court.

Both of petitioners' points are well taken. We have previously considered judicial economy, the need for speedy adjudication of an issue, and avoidance of needless appeals when evaluating whether to exercise discretionary, concurrent jurisdiction over an original action. See *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 53, 687 P.2d 622 (1984) ("Without question, if this court declines to exercise jurisdiction in this action, it will be faced with the identical issue in a subsequent appeal

4

from an action before the district court."); see also *Long v. Board of Wyandotte County Comm'rs*, 254 Kan. 207, 212, 864 P.2d 724 (1993) ("It is only where an issue of law affects public officials, presents an issue of great public importance and significant state interest, and requires a speedy adjudication that mandamus is an appropriate and proper means to decide the issue."); *State, ex rel., v. State Highway Comm.*, 132 Kan. 327, 334-35, 295 P. 986 (1931) ("The use of mandamus to secure a speedy adjudication of questions of law for the guidance of state officers and official boards in the discharge of their duties is common in this state."). In addition, this case will define a legislatively imposed duty of the governor, a constitutional officer and the leader of the executive branch of state government. The governor's timely performance of the duty at issue, as petitioners emphasize, affects the function, fairness, and efficiency of the coequal judicial branch in its service to Kansas citizens. This case thus presents an important public question of statewide importance appropriate for this court's attention in the first instance. See *State ex rel. Stephan v. Finney*, 251 Kan. 559, 568, 836 P.2d 1169 (1992) (interpretation of governor's constitutional authority appropriate for original action filed in Supreme Court); see also *Manhattan Bldgs.*, 231 Kan. 20, Syl. ¶ 4 (mandamus "proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business").

Turning to standing, this court has allowed original actions in mandamus when the petitioner demonstrates a need "'to secure a speedy adjudication of questions of law for the guidance of state officers and official boards in the discharge of their duties.'" *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 498, 14 P.3d 1154 (2000). And the court has determined such guidance questions when the action was brought by state or political actors other than the attorney general on behalf of the State. See *Board of Sedgwick County Comm'rs v. Noone*, 235 Kan. 777, 779-80, 682 P.2d 1303 (1984) (action in mandamus against district court judge brought by board of county commissioners to secure remittance of fines appropriate vehicle for the guidance of

5

public officials); see also *Wilson v. Sebelius*, 276 Kan. 87, 88, 90-91, 72 P.3d 553 (2003) (action in mandamus against governor brought by Democratic Party of Shawnee County challenging constitutionality of statutory scheme decided in original action). The petitioners have standing to bring this action.

The governor's first argument requires us to perform statutory interpretation or construction, which raises a question of law. *State v. Jolly*, 301 Kan. 313, 320, 342 P.3d 935 (2015). We routinely recite that our initial task is statutory interpretation, as long as the language used by the legislature is plain and unambiguous. See *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). If the language is less than clear or is ambiguous, we move to statutory construction and use the canons of construction and legislative history and other background considerations to divine the legislature's intent. See 291 Kan. at 216.

The statute at issue in this case, K.S.A. 2015 Supp. 25-312a, reads in pertinent part: "Any appointment made by the governor . . . *shall* be made within 90 days following receipt of notice from the clerk of the supreme court." (Emphasis added.) Petitioners argue that the word "shall" creates a mandatory duty on the part of the governor to appoint within the prescribed 90-day period. The governor argues that the word "shall" is merely directory in connection with the time limit. Our decision between mandatory and directory will tell the tale because a merely directory provision is the mark of a discretionary duty, and it is well established that mandamus cannot be invoked to compel a public official to perform a discretionary duty. See *Gaslight Villa, Inc. v. City of Lansing*, 213 Kan. 862, 872-73, 518 P.2d 410 (1974) ("This remedy may not be invoked to control discretion, or to enforce a right that is in substantial dispute.") (citing *Curless v. Board of County Commissioners*, 197 Kan. 580, 419 P.2d 876 [1966]); see also *Kansas Bar Ass'n*, 270 Kan. at 491 ("'Mandamus may not be invoked to control discretion.'"); *Arney v. Director, Kansas State Penitentiary*, 234 Kan. 257, 260, 671 P.2d 559 (1983) ("It is well established that mandamus will not lie for the performance of an

6

act involving discretion on the part of a public official.") (citing *Topeka Bldg. & Construction Trades Council v. Leahy*, 187 Kan. 112, 353 P.2d 641 [1960]); *Martin, Governor, v. Ingham*, 38 Kan. 641, 651, 17 P. 162, 168 (1888) (governor subject to mandamus only to compel ministerial acts, not discretionary acts; "ministerial act is one which a public officer or agent is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed").

We have previously recognized that the legislature's use of the word "shall" can have different meanings in different provisions. Because the word's meaning is not plain, statutory construction rather than statutory interpretation is necessary.

Our 2009 decision in *State v. Raschke*, 289 Kan. 911, 914-21, 219 P.3d 481 (2009), extensively reviewed the relevant historical caselaw on the issue and distilled a four-factor test to be used to determine whether a "shall" in a statute should be understood as directory or mandatory. Courts should consider "(1) legislative context and history; (2) substantive effect on a party's rights versus merely form or procedural effect; (3) the existence or nonexistence of consequences for noncompliance; and (4) the subject matter of the statutory provisions, *e.g.*, elections or notice on charges for driving under the influence." 289 Kan. at 921.

The first *Raschke* factor, legislative context and history, cuts convincingly in favor of the governor in this case.

The 90-day time limit was added to the statute by way of a 2014 set of amendments, the only amendments since 1987. See L. 2014, ch. 82, sec. 25. Earlier language had provided for a 60-day time limit, but it began to run at the time the vacancy occurred rather than at the time the appellate clerk provided notice to the governor. The

7

2014 amendments added 30 days and started the clock at the notice. They also provided that the clerk had up to 120 days after a vacancy occurred to provide the notice in the first place. See L. 2014, ch. 82, sec. 25. In other words, the legislature decided to substantially lengthen the potential time a judicial position such as the one before us today could remain open. Even if the statutory time limits are met, a vacancy can go unfilled for the 4 months until the clerk's notice plus the 3 months of the governor's process. This total of 7 months contrasts dramatically with the total of 2 months post-vacancy that the statute contemplated before the 2014 amendments. In short, the legislative context indicates less, rather than more, urgency.

The governor's response makes another cogent point about legislative context and history by comparing K.S.A. 2015 Supp. 25-312a to a different statute covering other judicial appointments. To understand this comparison, the following basic pieces of information are helpful.

The judicial position at issue in this case is subject to partisan election. About half of the district judges and district magistrate judges in Kansas' 31 judicial districts obtain their seats by such a selection method. The other half arrive at the bench through a nonpartisan district nominating commission process. In the nonpartisan districts, for district magistrate judge positions, the commission vets the applicants and makes the appointment, see K.S.A. 2015 Supp. 20-2914; for district judge positions, the commission vets the applicants and submits the names of nominees to the governor, and the governor then makes the appointment from among the nominees, see K.S.A. 2015 Supp. 20-2909; K.S.A. 2015 Supp. 20-2911. While K.S.A. 2015 Supp. 25-312a addresses the filling of a vacancy on the bench that arises between elections for a district judge or district magistrate judge seat subject to partisan election, K.S.A. 2015 Supp. 20-2911 speaks to filling district judge vacancies that arise anytime in those judicial districts that use the nonpartisan nominating commission process.

The governor's comparison of the two statutes accurately observes that both contain time limits for the governor's action on appointments. But only K.S.A. 2015 Supp. 20-2911 contains a provision designed to control in a situation like that giving rise to this case—when the governor fails or refuses to appoint within the time limit. If such a situation occurs on a district judge vacancy in a nonpartisan nominating commission district, then the Chief Justice of the Supreme Court steps in and makes the appointment. K.S.A. 2015 Supp. 20-2911(a).

The legislature's creation of the backup plan for gubernatorial appointments in the nonpartisan nominating commission districts demonstrates that it knows how to make sure it has such a plan if it is considered necessary. The fact that it did not put a backup in place for partisan election districts is persuasive evidence that it did not believe one to be necessary for interim appointments such as the one before us today. Reasonable minds may differ on the wisdom of this policy choice, but the choice is not this court's to make or reform.

On the second *Raschke* factor, it does not appear that K.S.A. 2015 Supp. 25-312a's 90-day time limit is meant to confer a specific legal right on any one party. This factor tips the scale toward construction of the word "shall" as directory rather than mandatory. See *Raschke*, 289 Kan. at 916 (quoting, *inter alia*, *City of Hutchinson v. Ryan*, 154 Kan. 751, Syl. ¶ 1, 121 P.2d 179 [1942] [where strict compliance with provision essential to preservation of rights of parties affected, to validity of proceeding, provision mandatory; where provision fixes mode of proceeding, time within which official act to be done, provision directory; where provision merely intended to secure order, system, dispatch of public business, provision directory]).

On the third factor—whether the statute contemplates consequences for noncompliance with the 90-day time limit—again, the factor cuts in favor of the

9

governor's characterization of the word "shall" as directory only. Even petitioners' prayer for relief implicitly acknowledges that at least the most serious consequence of tardiness, *i.e.*, invalidation of any eventual appointment, is not intended by the legislature. They seek an immediate appointment, meaning they do not believe that the governor's reluctance to appoint *on time* should deprive him of the power to appoint *at all*. Indeed, the legislature appears to have provided for no adverse consequences for failure to meet the 90-day time limit. See *Raschke*, 289 Kan. at 917-18 (citing and discussing, *inter alia*, *Hooper v. McNaughton*, 113 Kan. 405, 407, 214 P. 613 [1923] [distinction between directory, mandatory lies in consequence of nonobservance; act done in disobedience of mandatory provision void; directory provision should be obeyed, but act done in disobedience may still be valid]).

The fourth *Raschke* factor focuses on subject matter of the statute at issue. It recognized that statutes dealing with elections and DUI notices tended to be held to be mandatory while statutes "governing order and timing of procedures are more likely to be determined to be directory only." *Raschke*, 289 Kan. at 918-20 (collecting numerous cases). The subject matter before us here deals explicitly with timing of the governor's appointment, not with his substantive power. This factor also favors the governor's argument that the "shall" in K.S.A. 2015 Supp. 25-312a is directory rather than mandatory.

Considering all of the four *Raschke* factors, we hold that the word "shall" in K.S.A. 2015 Supp. 25-312a should be interpreted as directory. Although the governor should appoint an interim district magistrate judge in a partisan election district within the 90-day time limit set out in the statute, we construe the statute to permit him to do so later.

CONCLUSION

For all of the reasons discussed above, the petition for writ of mandamus is denied.

BILES, J., and STEGALL, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

DAVID L. STUTZMAN, Senior Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 115,982 vice Justice Biles under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:** Senior Judge Stutzman was appointed to hear case No. 115,982 vice Justice Stegall under the authority vested in the Supreme Court by K.S.A. 20-2616.