IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,447

SHANE LANDRUM,
*Petitioner*,

v.

JEFFREY E. GOERING, PRESIDING JUDGE, CRIMINAL DIVISION,
KANSAS 18TH JUDICIAL DISTRICT; and STATE OF KANSAS,
*Respondents,*

and

STATE BOARD OF INDIGENTS' DEFENSE SERVICES,
*Intervenor/Respondent.*

SYLLABUS BY THE COURT

K.S.A. 22-4508 requires a district court to conduct an ex parte hearing when an attorney other than a public defender, including an attorney privately retained to represent a defendant, asks the court to consider a defendant's request for investigative, expert, or other services. The district court must determine (1) whether the defendant is financially unable to pay for such services and (2) whether the requested services are necessary to an adequate defense. If the district court finds the defendant is financially unable to pay for necessary services, it must authorize counsel to obtain the services for the defendant and approve State Board of Indigents' Defense Services compensation and payment under K.S.A. 22-4508.

Original action in mandamus. Writ of mandamus granted in part. Opinion filed July 21, 2017.

1

*Sarah G. Swain*, of The Swain Law Office, of Lawrence, argued the cause and was on the petition, and *Cooper Overstreet*, of the same firm, was with her on the briefs for petitioner.

*Stephen Phillips*, assistant attorney general, and *Derek Schmidt*, attorney general, were on the response for respondent Hon. Jeffrey Goering.

*Boyd K. Isherwood*, assistant district attorney, was on the response for respondent State of Kansas.

*Daniel E. Lawrence*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Stephen E. Robison*, of the same firm, was with him on the response and briefs for intervenor/respondent State Board of Indigents' Defense Services.

The opinion of the court was delivered by

LUCKERT, J.: This original action in mandamus raises the question of whether a partially indigent defendant who has retained counsel may pursue funding for certain services through the State Board of Indigents' Defense Services (Board or BIDS). The parties readily acknowledge that K.S.A. 22-4508 contemplates that a *court-appointed* attorney may request an *ex parte* hearing before the district court when acting as counsel for a partially indigent defendant who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense. If the district court determines that (1) the defendant is financially unable to pay for such services and (2) the requested services are necessary to an adequate defense, then the district court shall authorize counsel to obtain the services on the defendant's behalf. We conclude the plain language of K.S.A. 22-4508 also permits privately retained counsel to pursue the same procedure, so long as the defendant is financially unable to obtain investigative, expert, or other services necessary to an adequate defense.

FACTS AND PROCEDURAL BACKGROUND

The State charged Shane Landrum with first-degree murder, and he has been in state custody since his arrest in December 2014. Landrum is represented by privately retained counsel—that is, by an attorney who is neither a public defender nor court appointed. It is unclear who retained Landrum's counsel or how her fees are funded.

Landrum, through his retained counsel, moved to be declared partially indigent in early 2015. Landrum filed a financial affidavit in support of his motion, although he provided minimal information and completed only the case number, his name, his signature, and the date. He drew a line through the remaining questions regarding his financial situation. He listed no dependents or spouse, although his statement of facts in this mandamus proceeding indicates he has a wife and child. He also did not account for any resources used for paying attorney fees. On May 8, 2015, the then-presiding criminal judge of the Eighteenth Judicial District declared Landrum partially indigent.

Subsequently, Landrum requested a copy of the transcript for a preliminary hearing. The district court granted the request, ordering Landrum to pay 25% of the cost. Landrum also requested funding for investigative services, which the court approved.

After those orders were entered, the Honorable Jeffrey E. Goering assumed the duties of presiding criminal judge of the Eighteenth Judicial District. Landrum presented Judge Goering with a request for a transcript for the entire trial of another defendant charged with having acted with Landrum to commit first-degree murder. Ultimately, Judge Goering denied the request. Judge Goering explained: "[A]n indigent (or partially indigent) Defendant may only access BIDS for payment of expenses associated with his defense through *appointed* counsel," and, "going forward, based [on *Morrow v. State*,

3

18 Kan. App. 2d 236, 849 P.2d 1004 (1993),] I will not be approving any requests by retained counsel for State or county payment of expenses." (Emphasis added.) Landrum filed a motion to reconsider, which was denied. Judge Goering clarified he would honor requests the previous presiding judge had approved but would not grant future requests by retained counsel.

Landrum filed a Petition for Writ of Mandamus, naming Judge Goering and the State of Kansas as Respondents. Judge Goering responded and asked not to appear in the action "as an advocate for either side or to address the substantive merits of Petitioner's mandamus action." The State, through the Sedgwick County District Attorney's office, advocated for the Board to be added as a party and disclaimed any other interest in the matter: "In short, in what manner a criminal defendant's defense is funded does not appear to be a matter within the bailiwick of the instant Respondent."

The Board moved to intervene, and this court granted the motion, accepted briefs from Landrum and the Board, and heard oral arguments.

ANALYSIS

Before we reach the issue of statutory interpretation central to the resolution of this case, we consider whether we should exercise our original jurisdiction and whether Landrum has standing.

*Original Jurisdiction and Our Discretion*

Article 3, § 3 of the Kansas Constitution confers on this court original jurisdiction in proceedings in mandamus. K.S.A. 60-801 defines mandamus as "a proceeding to

4

compel some inferior court . . . to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law." Considering the requirements of the statute, Landrum presents an argument that is sufficient to invoke our jurisdiction by arguing that the plain language of K.S.A. 22-4508 imposes a duty on the district court—a duty that Landrum argues means the judge must allow compensation from the Board for necessary defense services he cannot afford. Nevertheless, even when mandamus jurisdiction may be facially appropriate, mandamus remains an extraordinary remedy, and determining whether to grant this extraordinary remedy is a matter for this court's discretion. *State v. Becker*, 264 Kan. 804, 807, 958 P.2d 627 (1998).

We have stated one of our discretionary considerations via court rule, indicating that where "adequate relief appears to be available in a district court" this court "ordinarily will not exercise original jurisdiction." Supreme Court Rule 9.01(b) (2017 Kan. S. Ct. R. 59). Consequently, a mandamus petitioner must state a reason why the action is brought in this court rather than the district court. Kansas Supreme Court Rule 9.01(b); *Ambrosier v. Brownback*, 304 Kan. 907, 909, 375 P.3d 1007 (2016). Landrum complied with this requirement by arguing the futility of seeking reconsideration by the district court. As he points out, Judge Goering indicated his ruling was final, and Judge Goering explicitly mentioned he expected Landrum would "take some effort to have it reviewed by a higher court." Judge Goering acknowledged, "[I]f the Supreme Court says that I'm wrong in the way that I'm reading these [regulations], then that means that he gets experts—or at least gets to ask for experts and it may mean that he gets a transcript."

Through caselaw, we have listed other considerations relevant to the exercise of discretionary jurisdiction over a mandamus action, including judicial economy, the need for speedy adjudication of an issue, and avoidance of needless appeals. *Ambrosier*,

5

304 Kan. at 909. Each of these considerations also favors the exercise of jurisdiction here. Under the district court's ruling, Landrum may have to proceed to trial without the expert or other services he believes are necessary to his defense. Because Landrum asserts these defense services are guaranteed to him under Kansas law and the United States Constitution, he will inevitably raise this issue on appeal if he is convicted. Moreover, Judge Goering's interpretation of K.S.A. 22-4508 will not impact just this case but other criminal cases pending in the Eighteenth Judicial District. In other words, the considerations of judicial economy, the need for speedy adjudication of an issue, and avoidance of needless appeals weigh in favor of us exercising our mandamus jurisdiction.

Another consideration favors the exercise of our discretionary jurisdiction. Mandamus offers a proper remedy when the essential purpose is to obtain an authoritative interpretation of law for the guidance of public officials in their administration of public business, notwithstanding the fact that there also exists an adequate remedy at law. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 52, 687 P.2d 622 (1984). Hence, the exercise of original jurisdiction is appropriate when the mandamus petition "presents an issue of great public importance and concern" and the exercise of jurisdiction will "settle the question." 236 Kan.at 52. The contested issue in this case—whether the Board's funds may be accessed through K.S.A. 22-4508 by a criminal defendant financially unable to afford services necessary to an adequate defense but able to gather resources to retain counsel—presents an issue of great public importance and concern and requires the court to provide an authoritative interpretation of K.S.A. 22-4508 for the guidance of Kansas judges in the administration of public business. This contested issue has apparently already led to conflicting interpretations among the district courts of Kansas:  Landrum asks us to notice the ruling of a judge in another judicial district ordering the Board to pay for services for a partially indigent defendant appearing with retained counsel. Hence, mandamus is an appropriate

remedy here that will resolve conflicting interpretations of K.S.A. 22-4508 among the district courts in Kansas.

Landrum seeks more than an interpretation of the statute, however. He seeks a writ compelling the district court to order the Board to pay for the defense services he requests. As we have noted, mandamus may be appropriate to compel some person or body to perform a "clearly defined duty." *Becker*, 264 Kan. at 807. But "'[m]andamus may not be invoked to control discretion.'" *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 491, 14 P.3d 1154 (2000) (quoting *Link, Inc. v. City of Hays,* 268 Kan. 372, 375, 997 P.2d 697 [2000]). As we will discuss in more detail, some of Landrum's requests for relief entail an exercise of discretion. Nevertheless, to the extent he seeks an interpretation of K.S.A. 22-4508, which presents an issue of law that affects public officials, including judges and the Board, and that interpretation leads to our determination that the district court must perform a statutorily specified duty, we are justified in using our discretion to exercise original jurisdiction. See *State ex rel. Stephan*, 236 Kan. at 52.

*Landrum has standing.*

With that preliminary issue resolved, we consider whether Landrum has standing. Generally, a private citizen may seek to compel the performance of a public duty only where he or she can show "'an injury or interest specific and peculiar to himself, and not one that he shares with the community in general.'" *Kansas Bar Ass'n*, 270 Kan. at 491 (quoting *Stephens v. Van Arsdale*, 227 Kan. 676, 683, 608 P.2d 972 [1980]). Landrum meets this requirement:  Landrum faces the prospect of proceeding to trial on charges, including first-degree murder, without the benefit of investigative, expert, or other services to which he may be entitled under Kansas law and the United States Constitution.

7

With these preliminary questions resolved, we consider whether K.S.A. 22-4508 imposes a clearly defined duty.

*Rules Governing Our Interpretation of K.S.A. 22-4508*

Determining the ultimate question of whether K.S.A. 22-4508 imposes a duty on Judge Goering and other judges requires us to interpret the statute. Accordingly, we are presented with a question of law subject to unlimited review. *In re Marriage of Brown*, 295 Kan. 966, 969, 291 P.3d 55 (2012). Legislative intent governs that review, and "[r]eliance on the plain and unambiguous language of a statute is 'the best and only safe rule for determining the intent of the creators of a written law.'" *State v. Spencer Gifts,* 304 Kan. 755, 761, 374 P.3d 680 (2016) (quoting *Merryfield v. Sullivan*, 301 Kan. 397, 399, 343 P.3d 515 [2015]). Therefore, we read the language as it appears, without adding or deleting words, and only "[i]f the language is less than clear or is ambiguous, [do] we move to statutory construction." *Ambrosier*, 304 Kan. at 911. In other words, if a statute is not ambiguous, we do not examine "legislative history, background considerations that speak to legislative purpose, or canons of statutory construction." *In re Marriage of Brown*, 295 Kan. at 969.

*The Plain Language of K.S.A. 22-4508*

K.S.A. 22-4508 states:

"An attorney other than a public defender who acts as counsel for a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in the defendant's case may request them in an *ex parte* application addressed to the district court where the action is pending. Upon finding, after

8

appropriate inquiry in the *ex parte* proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the district court shall authorize counsel to obtain the services on behalf of the defendant. The district court may, in the interests of justice, and upon a finding that timely procurement of necessary services could not await prior authorization, ratify such services after they have been obtained. Within the standards and guidelines adopted by the state board of indigents' defense services, the district court shall determine reasonable compensation for the services and approve payment to the organization or person who rendered them upon the filing of a certified claim for compensation supported by a written statement specifying the time expended, services rendered, expenses incurred on behalf of the defendant, and the compensation received in the same case or for the same services from any other source. Payment shall be made in the manner provided in K.S.A. 22-4507, and amendments thereto."

The parties' arguments focus on the meaning of the first seven words in the statute: "An attorney other than a public defender." Landrum argues the plain language of the statute applies to *any* attorney other than a public defender and applies to his situation, *i.e.*, where a defendant has retained counsel but does not have the financial ability to pay for investigative, expert, or other services. The Board argues instead that the language refers to only those attorneys who are not public defenders but are part of the Board's system of contract appointed counsel.

The plain language of the statute does not go as far as the Board suggests, and we would have to add words in order to reach the Board's desired reading, such as: "An attorney other than a public defender *or retained counsel*." This we cannot do. See *In re Marriage of Brown*, 295 Kan. at 969. As per the words used in K.S.A. 22-4508, the only attorneys excluded are public defenders. Landrum's privately retained attorney is not a public defender and, thus, is not excluded. As a result, she falls within the category of attorneys who may seek services for a client who is financially unable to obtain such services. See *State v. Buehler-May*, 279 Kan. 371, 379, 110 P.3d 425 (2005).

9

Moreover, except in cases involving a public defender, K.S.A. 22-4508 imposes only two restrictions on a defendant's eligibility for investigative, expert, or other services: The defendant must be financially unable to obtain the services, and the services must be "necessary." See K.S.A. 22-4508. Notably, the financial restriction does not explicitly, or even implicitly, require a finding that the defendant be unable to employ counsel or be unable to employ counsel *and* obtain the services. An inability to obtain necessary services serves as the only financial condition.

We, therefore, conclude that the plain and unambiguous language of K.S.A. 22-4508 considers the financial inability of the defendant to pay for defense services and the necessity of the requested services, not the status of his or her attorney, except in cases involving a public defender. Therefore, a district court has a duty under K.S.A. 22-4508 to conduct an ex parte hearing when an attorney other than a public defender, including an attorney employed by the defendant, asks the court to consider a defendant's request for investigative, expert, or other services. The district court must determine (1) whether the defendant is financially unable to pay for such services and (2) whether the requested services are necessary to an adequate defense. If the district court finds that the defendant is financially unable to pay for necessary services, it must authorize counsel to obtain the services for the defendant and approve compensation and payment under K.S.A. 22-4508.

We acknowledge the district court reached the opposite conclusion in reliance on *Morrow*, 18 Kan. App. 2d 236. The Board asks us to adopt *Morrow*'s reasoning. We decline to do so because we do not find the Court of Appeals decision persuasive for several reasons.

10

First, *Morrow* deals with a different statutory provision (K.S.A. 22-4509 rather than 22-4508) and different statutory language. K.S.A. 22-4509 concerns the right to a transcript for appeal or post-conviction proceedings and is not relevant to our case. Significantly, the statute at issue in *Morrow*, unlike 22-4508, does not contain the phrase that has become the focus of this appeal: "An attorney other than a public defender." In fact, the statute discussed in *Morrow* does not reference an attorney at all.

Second, the 1993 decision in *Morrow* does not follow the rubric employed by this court when faced with determining legislative intent—that is, using the language of a statute as a guide and looking to other sources to aid in discerning legislative intent only when the statutory language is ambiguous. See *In re Marriage of Brown*, 295 Kan. at 969. The *Morrow* court skipped this critical step of the analysis and did not analyze the words in the statute. Instead, apparently utilizing the doctrine of operative construction, the court jumped to an analysis of the Board's regulations and considered what those regulations might instruct regarding the application of the statute. *Morrow*, 18 Kan. App. 2d at 241-43. Since *Morrow*, we have "unequivocally declare[d] . . . that the doctrine of operative construction . . . has been abandoned, abrogated, disallowed, disapproved, ousted, overruled, and permanently relegated to the history books where it will never again affect the outcome of an appeal." *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013) (citing *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 [2010]). Under current Kansas law, a Kansas court should engage in an "unlimited review on the determinative question of statutory interpretation without deference" to the Board's interpretation as manifested in the regulations. *Ft. Hays St. Univ.,* 290 Kan. at 457. The *Morrow* court did not do so. Not only does this point reduce the persuasiveness of the *Morrow* decision, it explains why we do not rely on the Board's regulations in making our independent review of K.S.A. 22-4508.

Our own unlimited review of K.S.A. 22-4508 compels us to conclude that, under the plain language of the statute, it applies to Landrum's request because the request was made by "[a]n attorney other than a public defender." Given this plain language, we find *Morrow* unpersuasive.

The Board, in addition to relying on *Morrow*, makes an extensive *in pari materia* argument. Based on provisions of other related statutes, the Board urges us to reach the same conclusion as did the *Morrow* court:  A defendant either has appointed counsel and receives the benefit of the Board's payments or has retained counsel and is not entitled to any payments from the Board. Simply put, "a defendant cannot pick what he wants to pay for and what he wants the State to pay for." *Morrow*, 18 Kan. App. 2d at 241. But, after considering the Indigent Defense Services Act (Act), the Board's *in pari materia* arguments and its reliance on the related principle that all parts of a statute should be construed together are unavailing.

Typically, "[a]s with any rule of construction, courts generally turn to an *in pari materia* analysis to resolve a statutory ambiguity and to ascertain legislative intent." 2B Singer & Singer, Statutes and Statutory Construction § 51:3, P. 233 (7th ed. 2012); see 2B Singer & Singer, Statutes and Statutory Construction § 51:1 (discussing principle that all portions of a statute are construed together and noting the principle has limitations when other statutes are construed together because "courts do not resort to other statutes if the statute being construed is clear and unambiguous"). The Board attempts to raise ambiguity by construing K.S.A. 22-4508 to essentially include words by reference— words not actually found in 22-4508. By referencing these other statutes within the Act and its own regulations, the Board constructs an argument about what the legislature intended by those seven words in 22-4508. But the Board has not persuaded us the language of 22-4508, by itself, suggests ambiguity.

Moreover, the Board's arguments reveal the danger of trying to discern legislative intent from means other than the plain language of a particular statute. By looking to other, related statutes as a source of additional restrictions on the ability to access the Board's resources, the Board has constructed a plausible scenario supporting the conclusion that the legislature intended to make the Board's resources available only when a defendant had appointed counsel. The Board supports that scenario with strong policy arguments about the potential for abuse and its strained financial resources. But the Board's reading of various provisions of the Act ignores differences in wording between other statutes and K.S.A. 22-4508. These differences, when considered as a whole, support the conclusion that the legislature said all it meant to say in 22-4508 and that it intended to ensure that the right to counsel would include those services necessary for effective representation, regardless of whether the defendant had the ability to pay for some, but not all, aspects of that representation.

For example, the legislature recognized that "[a] defendant charged by the state of Kansas in a complaint, information or indictment with any felony is entitled to have the assistance of counsel . . . ." K.S.A. 22-4503(a). Then, elsewhere throughout the Act, the legislature addressed the mechanism for appointing counsel "if the defendant is not financially able to employ an attorney." K.S.A. 22-4503(b). The Act also addresses the procedures for appointed counsel to seek compensation. Specifically, K.S.A. 22-4507 limits those entitled to payments to "[a]n attorney, other than a public defender or assistant public defender or contract counsel, who is appointed by the court to perform services for an indigent person, as provided by article 45 of chapter 22 of the Kansas Statutes Annotated . . . ." While this limitation would support the Board's position, it was not included in K.S.A. 22-4508 despite the fact its inclusion in 22-4507 shows that the legislature knew how to limit the class of eligible cases and to eliminate those cases where counsel has been retained.

13

The legislature also devised two different tests for determining financial eligibility. The statute at issue in this case, K.S.A. 22-4508, requires a judge to examine whether a defendant "is financially unable to obtain investigative, expert or other services necessary to an adequate defense." In contrast, K.S.A. 22-4503(c), which relates to a defendant's entitlement to appointed counsel, hinges eligibility upon a determination "that the defendant is not able to employ counsel, as provided in K.S.A. 22-4504." And K.S.A. 22-4504 repeatedly refers to the test of whether the defendant is "financially unable to employ counsel." In addition, K.S.A. 22-4503(e) relates to changes in eligibility for the payment of attorney fees, requiring an attorney who "learns that the defendant has funds or other resources sufficient to enable the defendant *to employ counsel*" to so advise the court. (Emphasis added.)

These latter statutes focus on inability *to employ counsel*, not an inability *to afford those services necessary to an adequate defense*. In other words, the legislature chose to use different tests and, in the case of K.S.A. 22-4508, chose not to include a test dependent upon the ability to afford counsel. The Board, through its regulations, conflated the terms and the tests, but the statutes do not. See K.A.R. 105-2-1(d) (defining "[l]egal representation" to include a "qualified and effective attorney," transcripts, and other defense services); K.A.R. 105-4-1(a) (2016 Supp.) (stating method of determining eligibility for "legal representation" and making part of the test the "anticipated cost of private legal representation"); K.A.R. 105-4-5 (stating a court shall find a defendant partially indigent if he or she "is able to pay some part of the cost of legal representation").

The legislature also recognized the two prongs of having effective counsel and having necessary investigative and expert services for defendants as essential to the Board's mission. See K.S.A. 22-4522 (defining the Board's powers and duties and

14

requiring it to set "[s]tandards for entitlement to legal representation at public expense"); K.S.A. 22-4523 (defining the Board's additional powers and permitting the Board to publish data, conduct training programs, and provide technical assistance regarding the "legal representation of indigent persons"). Given that, the legislature could have more concisely and efficiently combined the two concepts throughout the Act. Yet it chose to segregate the two prongs when enacting K.S.A. 22-4508 and stating its test for eligibility, clearly indicating the two prongs should not be combined for that purpose.

Thus, the Board's statutory construction arguments do not automatically lead us to its championed position. We could pick and choose which provisions from other parts of the Act support the Board's view and which support Landrum's. Choosing one path or another puts a court in the role of making policy decisions. But that is not our role. See *Spencer Gifts,* 304 Kan. at 765 ("The legislature may have had a variety of policy reasons for choosing the language it enacted and for creating distinct statutory protections . . . . Such 'questions of public policy are for legislative and not judicial determination.'"). This brings us back to a point we made earlier that deserves repetition: "Reliance on the plain and unambiguous language of a statute is 'the best and only safe rule for determining the intent of the creators of a written law.'" *Spencer Gifts*, 304 Kan. at 761 (quoting *Merryfield*, 301 Kan. at 399).

Consequently, we reject the Board's arguments and conclude that, under the plain and unambiguous language of K.S.A. 22-4508, Judge Goering had a duty, despite Landrum's representation by retained counsel, to hold an ex parte hearing to determine (1) whether Landrum is financially unable to obtain investigative, expert, or other defense services and (2) whether those services are necessary to an adequate defense. Therefore, the writ of mandamus is issued and relief ordered requiring the district court to hold an ex parte hearing on Landrum's request or requests for services.

Nevertheless, the writ will not extend to the point Landrum requests: We will not dictate the outcome of the ex parte proceeding before the district court. Any orders entered depend on Judge Goering's (or another judge's) discretion regarding whether Landrum could financially obtain necessary investigative, expert, or other services, and the previous orders entered in this case do not limit the district court's discretion going forward. K.S.A. 22-4504(e) provides: "The determination that a defendant is indigent or partially indigent shall be subject to review at *any time* by *any court* before whom the cause is then pending." (Emphasis added.) Thus, neither this court, nor Judge Goering, nor any other judge is bound by the earlier determination that Landrum is partially indigent. Since that determination is discretionary, it is outside the scope of this mandamus action. See *Kansas Bar Ass'n*, 270 Kan. at 491. We, therefore, direct the district court to engage in an independent inquiry into Landrum's financial abilities and the necessity of the requested services.

If, however, the district court finds that Landrum is unable to afford necessary defense services, the district court has a duty under K.S.A. 22-4508 to authorize counsel to obtain the services on behalf of Landrum and to obtain reimbursement from the Board.

CONCLUSION

For all the reasons discussed above, we grant the petition for writ of mandamus in part and direct the district court to hold an ex parte hearing on petitioner's request or requests for investigative, expert, or other services under K.S.A. 22-4508.