No. 103,758

In the Matter of the Marriage of: KRISTIN L. BROWN, *Appellant,*
and JOHN JARED BROWN, *Appellee.*

(291 P.3d 55)

Opinion filed October 26, 2012.

*Stephen P. Weir*, of Stephen P. Weir, P.A., of Topeka, argued the cause, and *Donald Lambdin*, of Law Offices of Lambdin, Lambdin & Fraser, Chartered, of Wichita, was with him on the brief for appellant.

*John Jared Brown*, appellee pro se, argued the cause and was on the brief.

The opinion of the court was delivered by

LUCKERT, J.: More than 50 years ago, in *Edwards v. Edwards*, 182 Kan. 737, Syl. ¶ 2, 324 P.2d 150 (1958), this court stated that a child support order entered during the pendency of a divorce action is interlocutory and may be modified at any time and in any manner, even to the extent of discharging accrued and unpaid installments. This appeal raises the issue of whether that holding remains valid in light of statutory changes that have occurred over that 50-year period. After reviewing the statutory changes, we hold that the Kansas Legislature has limited a district court's authority to discharge past-due child support in a final decree of divorce; specifically, a court's authority is limited by the provision in K.S.A. 60-1610(a)(1) that limits the retroactivity of a modification to a date at least 1 month after the date that a motion to modify was filed.

Based on this conclusion, we reverse the district court's order entered at the final divorce hearing that discharged all unpaid child

support that had accrued under the court's interlocutory child support orders. We also reverse the Court of Appeals' decision to affirm the order discharging the past-due amounts and remand to the district court for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

In February 2006, Kristin L. Brown petitioned for a divorce from her husband, John Jared Brown. The couple had two young daughters at that time. Soon after the filing, the district court entered temporary orders, one of which required Jared to pay monthly child support. Jared fell behind in these payments, and eventually his wages were garnished.

Despite the garnishments and several modifications to the child support order brought about by motions, by the time of the final divorce hearing in November 2009, Jared owed $15,524 in unpaid child support. At the hearing, Kristin requested a judgment against Jared for the child support arrearage and for other monies she claimed Jared owed her, including $15,000 Kristin had provided to erase spousal maintenance and child support obligations that Jared owed to his previous spouse. Jared countered with a number of arguments, including the contention that Kristin was trying to get him to pay her separate bills. Jared also claimed a right to the proceeds from the sale of the parties' home. After hearing the parties' arguments, the district judge made the following rulings on the record:

"I've heard enough. . . . I think it's in both parties['] best interest to make a clean break on this thing, and so here's what we are going to do. I'm calling it good. [Kristin] can keep all of the money from the proceeds from the sale of the house. . . . And so I'm calling it clean as of December 1 of 2009. There are no arrearages. All of the $19,000 [leftover from the home-equity proceeds] can go to satisfy whatever arrearages there exist. The $15,000 on the [child support for Jared's first wife] I construe as a gift, and I'm calling it good as of December 1, 2009. . . .

. . . .

". . . There were lots of monies paid from that equity for debts that I'm not sure were [Jared's] debts, and we haven't—the parties didn't present evidence on all of this stuff. And I just really do not think it's the way to handle this, to go duke it out over [$5,000] to $10,000, I just don't think it's worth it. . . . It's just not worth the fight, so that's why I'm calling it good. I think it's better for these parties to move forward without having any outstanding financial issues going at

each other over. Let's just move on with this thing. She can have the $20,000, we are calling it good. I'm now going to expect [Jared] is going to pay his child support in full every month on a timely basis; and if he doesn't, he's going to have to answer to me. But that's the way we are going to do that and that's the order of the Court."

On direct appeal, Kristin raised two issues before the Court of Appeals: (1) The district court abused its discretion in setting the conditions and terms of the parenting-time order and (2) the district court erred in disposing of the child support arrearage. See *In re Marriage of Brown*, No. 103,758, 2010 WL 4157111 (Kan. App. 2010) (unpublished opinion).

The Court of Appeals affirmed the district court's orders. Regarding the order discharging the unpaid child support, the Court of Appeals rejected Kristin's reliance on *In re Marriage of Schoby*, 269 Kan. 114, 120-21, 4 P.3d 604 (2000), a case involving a modification of child support *after* a divorce was final. The Court of Appeals concluded that the holding did not apply to child support obligations under an interlocutory or pendente lite—meaning during the pendency of litigation—child support order. The Court of Appeals reasoned:

"Installments of temporary support *pendente lite* do not become a final judgment on their due date. They are subject to review and modification by the district court and do not automatically become a final judgment. See *Edwards v. Edwards*, 182 Kan. 737, 324 P.2d 150 (1958). The district court's temporary order for support, for which an arrearage of $15,524 had accumulated before the final hearing, did not mature into a judgment." *Marriage of Brown*, 2010 WL 4157111, at *6.

Kristin filed a petition seeking this court's review of the Court of Appeals' decision. Review was granted only as to the child support arrearage issue. This court has jurisdiction under K.S.A. 20-3018(b) (petition for review).

## ANALYSIS

Kristin argues the Court of Appeals erred in relying on *Edwards* because statutory changes have effectively overruled the portion of the decision relating to a district court's authority to modify or vacate an interlocutory child support order. Because of the effect of these changes, she argues the statute applied in *Marriage of*

*Schoby*—K.S.A. 60-1610(a)(1)—also applies to interlocutory child support orders. As a result, according to Kristin, rather than distinguish *Marriage of Schoby*, the Court of Appeals should have applied the *Marriage of Schoby* court's holding that under K.S.A. 60-1610(a)(1) child support modifications operate prospectively only. *Marriage of Schoby*, 269 Kan. 114, Syl. ¶ 1.

Kristin's arguments require us to interpret various statutes relating to child support. Questions of statutory interpretation are issues of law over which this court exercises unlimited review. As in any situation in which a court is called upon to interpret or construe statutory language, the touchstone is legislative intent. To divine legislative intent, a court begins by examining and interpreting the language the legislature used. Only if that language is ambiguous does a court rely on any revealing legislative history, background considerations that speak to legislative purpose, or canons of statutory construction. When a statute is plain and unambiguous, a court merely interprets the language as it appears; a court is not free to speculate and cannot read into the statute language not readily found there. See *State v. Brown*, 295 Kan. 181, Syl. ¶ 5, 284 P.3d 977 (2012); *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012).

These rules of statutory interpretation apply to our analysis and comparison of the statutes that were in effect at the time of the decision in *Edwards*, those statutes that applied in *Marriage of Schoby*, and those statutes that controlled the district court's orders in this case. To facilitate this analysis and comparison, we begin with a discussion of *Edwards* and then examine the changes to the statutes that have occurred after that decision.

In *Edwards*, the wife filed a divorce action against her husband and obtained an ex parte order for temporary child support and alimony. The husband failed to comply with the ex parte order. Later, the district court vacated the child support obligation that had become due under the ex parte order. The wife appealed, and the husband sought to have the appeal dismissed because the district court's order was not final and, therefore, not appealable. In arguing that the order could be appealed, the wife urged the court to find that her husband's past-due payments for child support and

alimony became final judgments even though the divorce was not yet final. She further argued that the husband's property should be "taken on execution" and sold to satisfy the arrearages. *Edwards*, 182 Kan. at 738.

At the time of *Edwards*, an interlocutory child support order was authorized by section 60-1507 of General Statutes of Kansas of 1949. Further, the statute allowed the court to "modify *or vacate* such order from time to time as may be proper." (Emphasis added.) G.S. 1949, 60-1507. Applying this statute, the *Edwards* court concluded that "[a]n allowance of support . . . *pendente lite* . . . does not become a final judgment on which execution can issue, but is merely a temporary or *ad interim* provision for their support until the final determination of the action." *Edwards*, 182 Kan. 737, Syl. ¶ 1. The *Edwards* court distinguished between support decreed upon dissolution of the marriage and a temporary support order, which is

"interlocutory in character, and, like other interlocutory orders made during litigation, remains solely in the sound judicial discretion of the court . . . and may be modified as varying circumstances justify during the pendency of the action in any form in the district court, *even to the extent of discharging accrued and unpaid installments*." (Emphasis added.) *Edwards*, 182 Kan. 737, Syl. ¶ 2.

The *Edwards* court noted that G.S. 1949, 60-1510 (1957 Supp.) defined the district court's authority when entering and enforcing a decree of divorce. Under that provision, "[c]hild support ordered paid by the final decree may be modified whenever circumstances render such change proper, but the modifying order must operate *prospectively*, and, whether modified or not, past-due installments become final judgments as of the dates due and may be collected in the same manner as other judgments. [Citations omitted.]" *Edwards*, 182 Kan. at 743. In contrast, "the rule that past-due installments for child support ordered paid by the final decree become final judgments as of the dates due and may be collected in the same manner as other judgments, is clearly inapplicable to past-due installments of support allowed *pendente lite*." *Edwards*, 182 Kan. at 744. The court cited four grounds of support for its conclusion.

First, the *Edwards* court noted the plain language of G.S. 1949, 60-1507. Clearly, under this provision, a district court was authorized to "modify or vacate" an interlocutory order of child support and could do so from "time to time as may be proper."

Second, the *Edwards* court pointed to due process concerns. The court noted that, in Kansas at that time, child support "may be ordered paid in a final decree only after service of summons upon the defendant affording him an opportunity to appear and defend and after full consideration by the district court of all the evidence presented at the hearing upon the merits." *Edwards*, 182 Kan. at 744. Conversely, temporary support "may be entered *ex parte*, is merely interlocutory, and rests largely in the discretion of the court allowing it." *Edwards*, 182 Kan. at 744.

Third, the *Edwards* court explained: "[T]he past due installments . . . did not become final judgments . . . which could be collected by execution. . . . [T]hose installments, when due, were subject to enforcement by attachment . . . or by contempt proceedings." *Edwards*, 182 Kan. at 745. Thus, the purported execution in the hands of the sheriff had no effect because, as the *Edwards* court noted, G.S. 1949, 60-1507 contained no language permitting the enforcement of orders for support pendente lite by execution. *Edwards*, 182 Kan. at 746.

Fourth, the *Edwards* court reasoned that an allowance of temporary support does not become a "final judgment" as that term is defined in the Kansas Code of Civil Procedure. *Edwards*, 182 Kan. at 744; see *Earls v. Earls*, 26 Kan. *178, *178 (1881) (order for payment of alimony pendente lite is not appealable pending final determination of the suit). The *Edwards* court ultimately concluded that the district court's order revoking the ex parte order for temporary support was not a final order and was not subject to appellate review. Likewise, the district court's order denying the wife's motion requesting the husband's property to be certified for sale by execution to satisfy the temporary support arrearages was not a final order reviewable on appeal. *Edwards*, 182 Kan. at 745-46.

Over the years since *Edwards*, as Kristin suggests, there have been substantial statutory amendments that impact the rationale

of the *Edwards* decision. These changes included (1) altering the power to vacate an interlocutory child support order; (2) enacting provisions related only to ex parte orders; (3) limiting the retro-activity of modifications; (4) allowing garnishment and other enforcement procedures if temporary child support is not paid; and (5) requiring service and an opportunity to be heard before these enforcement mechanisms can be used. These changes are revealed by tracing the legislative history of G.S. 1949, 60-1507 and related statutes.

Some of these changes occurred in 1982 when the legislature modified what had been G.S. 1949, 60-1507. Between 1949 and 1982, these provisions had been recodified and could be found at K.S.A. 1981 Supp. 60-1607. In the 1982 amendments, the legis-lature took out the language that had specifically permitted the district court to "vacate or modify *any* interlocutory order from time to time" as deemed proper by the court. (Emphasis added.) L. 1982, ch. 152, sec. 7(b). In place of this language, the legislature adopted a provision relating to ex parte orders. This new provision, in addition to detailing the procedure and scope of an ex parte order, empowered the district court to "make any order authorized by this section, including vacation or modification." L. 1982, ch. 152, sec. 7(b); see K.S.A. 60-1607(b). Other than this provision relating to modification or vacation of ex parte orders, the new version of K.S.A. 60-1607 made no mention of modifying or va-cating interlocutory child support orders.

Instead, the legislature moved the provision regarding modifying orders, other than ex parte orders, to the statute relating to divorce decrees, K.S.A. 1982 Supp. 60-1610. The legislature made this in-tent clear by adding the word "prior" to a sentence that authorized the district court to "modify or change any order" relating to the support and education of minor children. As amended, the sen-tence read: "The court may modify or change any prior order." L. 1982, ch. 152, sec. 9(a)(1); K.S.A. 60-1610(a)(1). Allowing the di-vorce decree to contain an order modifying "any prior order" clearly encompassed any interlocutory child support order. Follow-ing this change, one might argue that the legislature's decision to move the provision had little impact on a court's discretion beyond

that recognized in the *Edwards* opinion; the counter to this argument would be that the word "vacate" was no longer used.

The potential importance of this debate to the issue before us was negated in 1991 when the legislature adopted language that restricted the retroactivity of a modification made in a divorce decree, by stating: "The court may make a modification of child support retroactive to a date at least one month after the date that the motion to modify was filed with the court." L. 1991, ch. 171, sec. 2(a)(1); see K.S.A. 60-1610(a)(1). By limiting the period of retroactivity, the legislature effectively limited the ability to vacate past-due child support that would have accrued before a motion to modify was filed.

These 1982 and 1991 amendments were still in place at the time of the divorce hearing in this case. At that time, the statute relating to a divorce decree read, in part:

"A decree in an action under this article may include orders on the following matters:

"(a) *Minor children.* (1) *Child support and education.* The court shall make provisions for the support and education of the minor children. The court may modify or change *any prior order . . . . The court may make a modification of child support retroactive to a date at least one month after the date that the motion to modify was filed with the court.* Any increase in support ordered effective prior to the date the court's judgment is filed shall not become a lien on real property pursuant to K.S.A. 60-2202 and amendments thereto." (Emphasis added.) K.S.A. 60-1610.

In addition to these post-*Edwards* statutory changes that altered a district court's power to vacate past-due child support obligations, other statutory amendments have provided ways to enforce interlocutory child support orders that did not exist at the time of the *Edwards* decision. In 1979, the legislature amended K.S.A. 60-1607 to include language permitting enforcement of interlocutory support orders by garnishment. L. 1979, ch. 183, sec. 3; see K.S.A. 60-1607(c)(1). For an order of garnishment to be issued, certain requirements had to be met, including service and the opportunity for a hearing if requested within the time period provided by the statute. Further, under statutes relating to the enforcement of duties of support and restitution, codified after *Edwards*, a court trus-

tee is authorized to collect support upon a district court's order or upon a written request of an obligee. L. 1972, ch. 123, sec. 4; see K.S.A. 2011 Supp. 20-378. Under that enforcement act, the term "support" is defined as "child support, *whether interlocutory or final,* and maintenance." (Emphasis added.) K.S.A. 2011 Supp. 20-376(3). In other words, there is no statutory distinction between a court trustee's enforcement of an interlocutory child support order and a child support order contained in a final divorce decree.

This similar treatment of a child support order contained in a final decree and an interlocutory child support order is also evident in the Income Withholding Act, K.S.A. 2011 Supp. 23-3101 through 23-3118 and 39-7,135, which was first enacted in 1985. L. 1985, ch. 115, sec. 1. Under the Act, an ex parte interlocutory support order may be enforced by income withholding under K.S.A. 2011 Supp. 23-3103(k)(1) and (2). "Any other interlocutory order for support may be enforced by income withholding pursuant to this act *in the same manner as a final order for support.*" (Emphasis added.) K.S.A. 2011 Supp. 23-3103(k)(3).

Collectively, these amendments significantly alter the statutory framework for interlocutory child support orders as compared to the statutes in place at the time of the *Edwards* opinion. There is no longer a general provision allowing a court to vacate any interlocutory child support order at any time, a distinction is drawn between ex parte orders and other orders, an order in a decree of divorce is limited in its retroactivity, and enforcement mechanisms are in place to facilitate the collection of amounts due under interlocutory orders where due process protections have been satisfied. These amendments alter and generally obliterate the first two grounds for the holding in *Edwards* and weaken the third ground, at least when that holding is applied to interlocutory orders other than ex parte orders, which was the type of order at issue in *Edwards.* See K.S.A. 60-1607(b) (specifically allowing court to modify or vacate ex parte orders).

As to the fourth ground, these post-*Edwards* statutory amendments do not necessarily transform interlocutory child support orders into "final orders" that can be appealed. See K.S.A. 2011 Supp. 60-254(a) ("A judgment is the final determination of the

parties' rights in an action."); K.S.A. 2011 Supp. 60-254(b) ("[A]ny order . . . , however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and the parties' rights and liabilities."); K.S.A. 2011 Supp. 60-2102(a), (b) (authorizing, in part, an appeal of a "final decision," a provisional remedy, or an injunction); *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 610, 244 P.3d 642 (2010) ("The term 'final decision' has been construed to mean "one which finally decides and disposes of the entire merits of the controversy, and reserves no further questions or directions for the future or further action of the court." ' "). Hence, these various statutory changes may not affect the ultimate holding in *Edwards* regarding whether an interlocutory child support order is appealable. Nevertheless, the question of whether the order can be appealed is not critical to the determination of the issue in this case of whether the district court has the authority to vacate an interlocutory order for child support.

Further, the statutes that led the *Edwards* court to its holding that the interlocutory order was not appealable do not control the issue in this case. Even though K.S.A. 60-254(b) provides authority for a district court to modify interlocutory orders in general, K.S.A. 60-1610(a)(1) is specific to the authority to modify child support orders entered prior to a divorce decree. This specific provision controls over a general statute. See *State v. Chavez*, 292 Kan. 464, 466, 254 P.3d 539 (2011) (when statutes overlap, specific statute controls over more general statute); *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007) (same), *cert. denied* 555 U.S. 937 (2008).

Moreover, the specific provision of K.S.A. 60-1610(a)(1) regarding modification and enforcement of child support restricts the district court's authority to vacate past-due child support obligations. Therefore, this provision and the provisions regarding enforcement of interlocutory child support orders, adopted after the decision in *Edwards*, undercut the Court of Appeals' reliance on *Edwards*. Although the amendments do not overrule *Edwards*, which dealt with an ex parte order and the issue of whether the order was appealable, they limit the reach of *Edwards'* holding to

those situations. Where, as here, the district court attempts to vacate an order that was entered after notice has been given and an opportunity for a hearing has been provided, the statute that controls the district court's authority is K.S.A. 60-1610(a)(1), which is the statute that was discussed in *Marriage of Schoby*, 269 Kan. 114.

Even though we apply the statute discussed and applied in *Marriage of Schoby* and not the statute discussed and applied in *Edwards*, the Court of Appeals was correct that much of the discussion in *Marriage of Schoby* does not apply to the facts of this case; indeed, there is no factual similarity between *Marriage of Schoby* and this case. The issue on appeal in *Marriage of Schoby* was whether the father's child support obligation continued after the child married at age 16 or whether the child's marriage was a " 'terminating event' " which automatically emancipated the child and rendered null the portion of court's final divorce decree that had ordered child support. *Marriage of Schoby*, 269 Kan. at 120-21. Neither the reasons for the modification or the timing of the modification are comparable to the situation in this case.

Despite these factual differences, the *Marriage of Schoby* court's interpretation of the retroactivity provision in K.S.A. 60-1610 was not limited to postdivorce modifications and is, therefore, applicable to our analysis. Applying K.S.A. 60-1610(a)(1), the *Marriage of Schoby* court, after quoting the language limiting the retroactive effect of a modification order to " 'to a date at least one month after the date that the motion to modify was filed with the court,' " held " 'the modification [made without a motion] operates prospectively only. [Citations omitted.]' " *Marriage of Schoby*, 269 Kan. at 117. The same conclusion was reached in *In re Marriage of Lauridsen*, No. 95,643, 2006 WL 2716064 (Kan. App. 2006) (unpublished opinion) (modification of support cannot be retroactive to 5 months before filing of motion to modify), which Kristin cites as significant because it represents another Court of Appeals decision that conflicts with the decision in this case.

In light of the specific language in K.S.A. 60-1610 limiting the period of retroactivity of a modification order, we hold that a district court's authority to discharge or vacate child support that was

due under an interlocutory order, other than an ex parte order under K.S.A. 60-1607(b), is limited. If a motion for modification has not been filed, the modification operates prospectively only. As Kristin notes, although several motions to modify were filed while the divorce was pending, the district court did not make findings that were tied to a motion to modify. Consequently, contrary to the Court of Appeals' holding in this case, the district court could enter only a prospective order regarding child support and was not authorized to vacate the temporary child support order that had resulted in an arrearage of $15,524.

Yet, as Jared argues, it is not entirely clear that the district court modified or vacated the order. The district court's order is ambiguous and could be interpreted to mean that the child support arrearage Jared owed to Kristin was offset by amounts that were due to Jared because of other financial considerations in the divorce. The Court of Appeals, however, did not discuss this possible ambiguity before concluding the district court had modified the interlocutory order. The Court of Appeals' interpretation of the district court's ambiguous comments may be correct, but it is equally possible that the district court intended to offset debts. We simply are unable to state with any certainty which one of the two alternatives was intended by the district court. As a result, we determine a remand is necessary so the district judge can clarify his intent and make further findings that are consistent with this decision regarding the application of K.S.A. 60-1610(a)(1).

The Court of Appeals' decision affirming the district court on that single issue subject to our review is reversed. The district court's order on that issue is reversed, and the case is remanded to the district court with directions.

MORITZ, J., not participating.

NICHOLAS ST. PETER, District Judge, assigned.