IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,306

STATE OF KANSAS *ex rel*. SECRETARY OF DEPARTMENT FOR CHILDREN AND FAMILIES,
and Minor Child, I.M.S., By and Through the Next Friend and Guardian,
NATASHIA S. GAFFORD,
*Appellees*,

v.

ALONZO SMITH,
*Appellant*.

SYLLABUS BY THE COURT

1.

A voluntary acknowledgment of paternity complies with K.S.A. 2016 Supp. 23-2204 and can be enforced even if the signatures on the document are not notarized or accompanied by other formalities related to the witnessing of signatures.

2.

Under the circumstances present in this case, a voluntary acknowledgment of paternity that complies with K.S.A. 2016 Supp. 23-2204 was not unenforceable because a person signing the form failed to read it or understand its terms.

3.

An individual who signs a K.S.A. 2016 Supp. 23-2204 voluntary acknowledgment of paternity may only revoke the acknowledgment by satisfying the requirements in K.S.A. 2016 Supp. 23-2209(e). If those requirements are not timely satisfied, those who executed the document cannot attempt to revoke the acknowledgment, attempt to rebut the presumption of paternity that arises from the acknowledgment, or attempt to establish

1

the existence of a conflicting presumption through, for example, genetic testing. As between a man and a mother who signed the voluntary acknowledgment of paternity, it creates a permanent father and child relationship.

4.

When an appellate court reviews a district court's best interests of a child determination, it recognizes that the district court is in the best position to make the inquiry and, in the absence of abuse of sound judicial discretion, its judgment will not be disturbed on appeal. Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the district court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 27, 2016. Appeal from Sedgwick District Court; HAROLD E. FLAIGLE, judge. Opinion filed April 7, 2017. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Kevin J. Zolotor*, of O'Hara & O'Hara LLC, of Wichita, argued the cause, and *Morgan O'Hara Gering,* of the same office, was on the brief for appellant.

*Daniel John Macias*, DCF/CSS contract attorney, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  The Kansas Parentage Act, K.S.A. 2016 Supp. 23-2201 *et seq.*, provides an informal procedure for acknowledging paternity whereby a person signs a

2

voluntary acknowledgment of paternity (VAP). K.S.A. 2016 Supp. 23-2204 directs the state registrar of vital statistics to create a VAP form listing the rights and responsibilities of acknowledging paternity. The form must also advise that signing the form acknowledges paternity, "creates a permanent father and child relationship," and obligates the father to support the child, unless the acknowledgment is revoked by court order in an action filed within 1 year of the child's birth. K.S.A. 2016 Supp. 23-2204(b)(1), (2).

Nevertheless, another statute within the Kansas Parentage Act, K.S.A. 2016 Supp. 23-2208(a)(4), provides that an individual who signs a VAP form is merely "presumed to be the father of [the] child." And K.S.A. 2016 Supp. 23-2208(b) allows for rebutting the presumption by clear and convincing evidence and does not impose a time limitation for doing so.

This appeal requires us to determine what the legislature intended by providing for the creation of a permanent father and child relationship in one statute but only a presumptive relationship in another. Before reaching that question, we first determine that the VAP at issue in this case was valid and enforceable. We then construe the ambiguous statutes and hold that individuals who sign a VAP are bound by the rights and responsibilities delineated in K.S.A. 2016 Supp. 23-2204, including the creation of a permanent father and child relationship, if the VAP is not revoked by court order within 1 year of the child's birth. As applied to this case, in which an individual who signed a VAP seeks its untimely revocation, this means the VAP established a permanent father and child relationship. We also conclude that no other issue raised by the parties requires us to remand this case for further proceedings or to refuse to recognize a permanent father and child relationship.

3

This case began in February 2009 when the State of Kansas *ex rel.* the Secretary of Social and Rehabilitation Services (now the Department for Children and Families [DCF]) filed a Petition for Support against Alonzo Smith on behalf of I.M.S., a minor child. DCF filed the action after Natashia Gafford, I.M.S.'s mother, assigned to it I.M.S.'s child support claim pursuant to K.S.A. 2008 Supp. 39-709. The State seeks reimbursement from Smith for the past support it has provided for I.M.S.; the State also seeks an order obligating Smith to pay future child support. Neither Smith, I.M.S.'s mother, the State, nor anyone else asserts—or has ever asserted—that Smith is actually I.M.S.'s natural (or biological) father. But Smith signed a VAP at the hospital shortly after I.M.S.'s birth on May 18, 2000, and this VAP serves as the sole basis for the State's claims.

Smith initially answered the 2009 petition pro se and, in doing so, disclaimed paternity. He later retained counsel who filed a number of motions on his behalf. Through these motions, Smith asserted that I.M.S.'s biological father was Hillard Sanders who had passed away by the time this action began. Smith requested genetic testing to prove Sanders' paternity and also sought to add Sanders' estate as a party. The district court denied both motions. In another motion, Smith sought to revoke the VAP. The district court conducted an evidentiary hearing on this motion at which Gafford, Smith, and others testified.

Gafford testified that Sanders was I.M.S.'s biological father. She described Sanders as a gang member whom she did not want involved in his son's life due to his dangerous criminal lifestyle. When Gafford sought State assistance during her pregnancy, she reported that Sanders was the father. Gafford also testified that the State red-flagged

her file because it would not seek support from Sanders due to his criminal and gang activity.

At some point, the State learned of the VAP in which Smith was purported to be I.M.S.'s father. Gafford testified that when DCF representatives asked her which purported father was I.M.S.'s natural or biological father, she never pointed to Smith. As to Smith's involvement, Gafford testified that Smith, who was her friend, asked her about the father of her child while she was in the hospital. When she indicated she did not want the biological father to be involved in the baby's life, Smith said he wanted to be the father. Gafford further detailed their conversation, in which Smith indicated:

> "I'm almost 50 and I don't have any kids and no one has my name and [the baby] needs a name. I said [the baby] needs my name. . . . I said the baby can have my name and he kept insisting . . . on being the dad. I said, why would you want to do that? And he was just like when he died he didn't have anybody to leave anything to . . . and he was just getting older and he had not got married, and so after talking about it, I was kind of like, okay, and he asked me, well, do I need to get an attorney or something? I said, well, I don't know the legality of it. I said, if you think you need to talk to an attorney, go ahead, but I don't want you trying to take my baby from me. I'm just letting you be dad, you know."

When asked about the VAP, Gafford did not recognize it, but she recognized her and Smith's signatures on it, and she recalled that the address listed on the form belonged to Smith at the time of I.M.S.'s birth. She did not provide any testimony regarding who witnessed the form or when this might have occurred. She also testified I.M.S.'s middle name was chosen because it was Smith's father's name.

5

Smith's memory differed from Gafford's on several points. He denied asking to be I.M.S.'s father. Rather, according to his testimony, he signed some paperwork at Gafford's request because Gafford wanted the baby to have Smith's last name:

> "[T]his was [Gafford's] request at the hospital. She said she wanted him to have my last name. And I asked her why. I said why can't you give him your last name. She said all her sons have different last names and I said, what's in a name? Okay, as long as his dad doesn't get mad thinking I'm trying to take his child . . . . And she told me that he didn't have a daddy. And I was like, everybody has a dad."

Smith also testified Gafford never asked him to be I.M.S.'s father nor to be listed on the birth certificate. Smith indicated he would not have signed anything if they had discussed him being I.M.S.'s father; their conversations concerned him being a big brother to I.M.S. He also testified that I.M.S.'s middle name was not the same as his father's name.

With respect to the VAP, Smith, like Gafford, did not recognize the form:

> "My name is on here but I don't recall this document with all this stuff on there. There was a piece of paper lying there and she asked me to sign it, and I asked her what it was and I said no because you might be trying to come after me later for child support. She said, no, I wouldn't do you like that. She just wanted him to have my last name. That's why the signature. We never talked about me being his dad and if I would have known that I wouldn't have signed anything. I mean, we were good friends, so I took her at her word when I asked her what it was."

Smith testified he did not read the form and could not have read the form at the hospital because he did not have his reading glasses with him.

The testimony of several witnesses called by Smith supported Smith's testimony that he considered himself to be like a big brother to I.M.S. These witnesses, Smith, and

6

Gafford all testified that Smith had been actively involved in I.M.S.'s life at various points. Smith saw I.M.S. regularly during the first 5 to 6 months of I.M.S.'s life. At some point, Smith and Gafford had an argument and temporarily ended contact. Shortly after that, Gafford resided with Bruce Sears, with whom she had three children. She lived with him until he was incarcerated in July 2004. Gafford indicated that Sears treated all of her children as he would his own. She also testified about an attempt to contact Smith when I.M.S. was around 4 years old; she wanted to ask Smith to agree to change I.M.S.'s last name to hers, but Smith never returned her calls. Around 2006, Smith and I.M.S. resumed contact. For approximately 3 years, Smith and I.M.S. continued regular contact. One year during that time, Smith claimed I.M.S. and one of Gafford's other children as dependents on his taxes. Smith also attended one parent-teacher conference and a school recital. Contact ended when Gafford requested financial support from Smith.

The district court concluded Smith was I.M.S.'s father based on the VAP. The court found Smith had not read the VAP before initialing and signing it but concluded the document was nevertheless legally binding under K.S.A. 2016 Supp. 23-2204 and established Smith as the legal father. The court noted Kansas law was properly reflected in the disclosures and those disclosures had given notice of Smith's legal duties. Noting that Smith failed to revoke the acknowledgment within the statutory time period, the court concluded his motion was time-barred. The district court also found that Smith's failure to date the form or sign it in front of a notary public or judge did not invalidate the VAP. As for Smith's arguments about his lack of understanding regarding the document's import, the district court held that Smith's failure to read the document or seek the advice of counsel did not make the acknowledgment unenforceable because Smith failed to prove his signature had been obtained by duress, coercion, fraud, or a mistake. Finally, the district court agreed with the guardian ad litem's conclusion that it was in I.M.S.'s best interest to find that Smith was I.M.S.'s legal father.

Smith appealed, and the Court of Appeals reversed the district court. *State ex rel. Secretary of DCF v. Smith*, No. 114,306, 2016 WL 3031277 (Kan. App. 2016) (unpublished opinion). The panel acknowledged K.S.A. 2015 Supp. 23-2204 and its provisions imposing a 1-year limitation on a revocation action. But the panel also noted that "revocation of the acknowledgment is not the only way to obtain a court order ending that parental relationship." 2016 WL 3031277, at *7. The other option, found at K.S.A. 2015 Supp. 23-2208(a)(4), recognizes that a VAP creates a presumption of paternity that can be rebutted by clear and convincing evidence. This presumption, the panel concluded, arises from the statute and not from facts "that have any probative value as evidence of the existence of the presumed fact, *i.e.*, actual paternity of I.M.[S.]" 2016 WL 3031277, at *8. The panel reasoned that the fact of paternity "'shall be determined from the evidence exactly as if no presumption was or had ever been involved.'" 2016 WL 3031277, at *8 (quoting K.S.A. 60-414[b]).

The panel concluded:  "[B]ecause both Smith and Gafford confirmed that the paternity acknowledgment in the [VAP] was false, Smith has, by clear and convincing evidence, successfully rebutted the presumption of paternity that statutorily arose from that executed [VAP]." 2016 WL 3031277, at *8. This meant, according to the Court of Appeals panel, that "the district court erred by construing the [VAP] as a binding legal obligation that can never be rebutted, even by stipulation of the parties and findings of fact made by the court itself." 2016 WL 3031277, at *9. The panel "reverse[d] the district court, end[ed] the father-child relationship, and den[ied] the State's petition for support." 2016 WL 3031277, at *9.

The State then filed a petition seeking this court's review of the Court of Appeals decision. We granted the State's petition and obtained jurisdiction through K.S.A.

8

60-2101(b) (jurisdiction to review judgments of the Court of Appeals) and K.S.A. 20-3018(b) (petition for review procedures).

ANALYSIS

Some background and detail regarding the use of the State-approved VAP form provides context to the parties' arguments.

Federal law requires states to maintain VAP programs in order to qualify for certain types of federal assistance, namely access to block grants that provide Temporary Assistance for Needy Families under Title IV-D of the Social Security Act. 42 U.S.C. § 654(20)(A) (2012); 42 U.S.C. § 666(a)(5)(C)-(E) (2012); see also Parness & Townsend, *For Those Not John Edwards: More and Better Paternity Acknowledgments at Birth*, 40 U. Balt. L. Rev. 53, 57-63 (2010). Kansas statutes setting up the program in this state require Kansas birthing hospitals, and permit certain other institutions, to participate in a VAP program. K.S.A. 2016 Supp. 23-2203. The VAP program provides a means for unmarried parents to name a father on the birth certificate with the intention of establishing a simple process for establishing paternity. See K.S.A. 2016 Supp. 65-2409a.

The Kansas VAP form signed by Smith is labeled as a "Consent Form for Birth Registration." It begins by explaining that the form is to be used "when the mother was not married at the time of conception or birth or any time between and a father's name is to be entered on the birth certificate." The form then contains a "Disclosure to BOTH Parents: Basic Rights and Responsibilities of Acknowledging Paternity." Using the wording specified in K.S.A. 2016 Supp. 23-2204, the form advises of the right to consult with an attorney and explains various rights and obligations that arise from acknowledging paternity, including the duty to support the child. The form also uses

9

statutory language in 23-2204(b) to advise: "(1) An acknowledgment of paternity creates a permanent father and child relationship which can only be ended by court order. A person who wants to revoke the acknowledgment of paternity must file the request with the court before the child is one year old . . . ." It also explains that in order to revoke the VAP "[t]he person will have to show that the acknowledgment was based on fraud, duress (threat) or an important mistake of fact, unless the request is filed within 60 days of signing the acknowledgment or before any court hearing about the child, whichever is earlier."

K.S.A. 2016 Supp. 23-2209(e) details the procedure for revoking a VAP. It limits those who may seek a revocation and the time in which they may do so, stating: "[T]he man named as the father, the mother or the child may bring an action to revoke the acknowledgment of paternity at any time until one year after the child's date of birth." K.S.A. 2016 Supp. 23-2209(e). With some slight difference in wording from the VAP form, 23-2209(e) requires one seeking to revoke the VAP to prove "fraud, duress or material mistake of fact" if neither an action related to the child nor an effort to revoke the acknowledgment had been brought in the 60 days after the VAP was signed. Compare K.S.A. 2016 Supp. 23-2204(b)(1) (requiring showing of "fraud, duress (threat) or an *important* mistake of fact") (emphasis added) with K.S.A. 2016 Supp. 23-2209(e) (requiring showing of "fraud, duress or *material* mistake of fact") (emphasis added).

The statute focused on by the Court of Appeals, K.S.A. 2016 Supp. 23-2208, provides in relevant part: "(a) A man is presumed to be the father of a child if: . . . (4) The man notoriously or in writing recognizes paternity of the child, including but not limited to a voluntary acknowledgment made in accordance with K.S.A. 2016 Supp. 23-2223 or K.S.A. 65-2409a, and amendments thereto." K.S.A. 2016 Supp. 23-2223 and K.S.A. 2016 Supp. 65-2409a relate to the completion of birth certificates, and K.S.A.

10

2016 Supp. 65-2409a provides the option of completing a birth certificate with a father's name based on a VAP. When a presumption of paternity arises under one of the alternatives listed in 23-2208, it "may be rebutted only by clear and convincing evidence, by a court decree establishing paternity of the child by another man or as provided in subsection (c)." K.S.A. 2016 Supp. 23-2208(b). Once the presumption has been rebutted, "the party alleging the existence of a father and child relationship shall have the burden of going forward with the evidence." K.S.A. 2016 Supp. 23-2208(b).

We now turn to applying these statutes to the present case. To do so, we have organized the parties' arguments into four questions: (1) Is the VAP signed by Smith valid? (2) Is the VAP signed by Smith enforceable given that he did not read it? (3) What is the effect of a VAP under the facts of this case? and (4) Is remand necessary?

1. *Is the VAP signed by Smith valid?*

Smith argues the VAP he signed is not valid because it lacked the formality required for an "acknowledgment." Smith's arguments on this point require us to interpret the Kansas Parentage Act and other statutes. Issues of statutory interpretation present a question of law subject to unlimited review. See *In re Marriage of Brown*, 295 Kan. 966, 969, 291 P.3d 55 (2012); *In re Estate of Foley*, 22 Kan. App. 2d 959, 961, 925 P.2d 449 (1996) (construction of Kansas Parentage Act subject to unlimited review). We follow a well-established rubric when faced with questions of statutory interpretation with the touchstone being legislative intent.

> "To divine legislative intent, a court begins by examining and interpreting the language the legislature used. Only if that language is ambiguous does a court rely on any revealing legislative history, background considerations that speak to legislative purpose, or canons of statutory construction. When a statute is plain and unambiguous, a court

11

merely interprets the language as it appears; a court is not free to speculate and cannot read into the statute language not readily found there." *In re Marriage of Brown*, 295 Kan. at 969.

Applying this rubric to the question of the VAP's validity, we begin with K.S.A. 2016 Supp. 23-2204(a), which directs the state registrar of vital statistics, in conjunction with the secretary for children and families, to provide VAP forms. The form signed by Smith and Gafford is labeled as a form of the Office of Vital Statistics, and Smith does not argue, at least directly, that the form deviated from a statutory requirement.

He indirectly suggests a statutory deviation, however, by arguing the statute's use of the term "acknowledgment" implies a degree of formality missing from the form. The Kansas form includes the following directions:  "This form should be completed and witnessed by hospital personnel . . . ." And the section of the form labeled "Witness' Information" simply reads:  "The above signatures were witnessed by _____ at _____Hospital on ___/___/___/." The VAP at issue in this case contains the handwritten name of the witness, the name of the hospital, and the date. The form does not contain another line for a witness' signature and does not require the witness to indicate that he or she has verified the identities of those signing the form.

Smith argues the lack of formality—in particular, the lack of verification—means he did not "acknowledge" paternity. He supports his argument in several ways. First, he cites the seventh edition of Black's Law Dictionary, which defines "acknowledgment" as:

"1. A recognition of something as being factual. 2. An acceptance of responsibility. 3. The act of making it known that one has received something. 4. A formal declaration made in the presence of an authorized officer, such as a notary public, by someone who signs a document and confirms that the signature is authentic." Black's Law Dictionary 23 (7th ed. 1999).

12

Smith focuses on the fourth definition, which requires the formality of confirming the authenticity of the signature before an officer.

Yet neither the Kansas Parentage Act nor the Office of Vital Statistics form require anything more than a witness to the signatures. And later editions of Black's Law Dictionary expand on the definition of "acknowledgment" by including a separate definition for an "acknowledgment of paternity," which it defines to mean: "A father's public recognition of a child as his own." Black's Law Dictionary 27 (10th ed. 2014). It further separately defines a "formal acknowledgment" to include: "A father's recognition of a child as his own by a formal, written declaration that meets a *state's requirements* for execution . . . ." (Emphasis added.) Black's Law Dictionary 27 (10th ed. 2014). The VAP in this case contained the statutory disclosures and was signed by both parents and a witness as required by the approved form. The Kansas Parentage Act does not explicitly require more, and neither does the meaning of the word "acknowledgment" when used in the context of an acknowledgment of paternity.

Nevertheless, Smith also argues there must be compliance with K.S.A. 53-501 *et seq.*, which codifies the uniform law on notarial acts. Kansas' notarial act specifies the procedures for taking an acknowledgment, including the verification of a signature's authenticity, and allows only a notary public, judge, clerk of a court, or certain other county officials to perform a "notarial act." See K.S.A. 53-503 (notarial acts); K.S.A. 53-504 (listing who may perform notarial acts). As Smith points out, in other statutes relating to paternity and placing names on birth certificates, the legislature has required the verification of signatures and, in some situations, an oath. See, *e.g.*, K.S.A. 2016 Supp. 23-2223 (requiring use of affidavits sworn to before a judicial officer to amend birth certificate, including when seeking to add a parent's name); K.S.A. 59-2114

(consent in adoption case "shall be in writing and shall be acknowledged before a judge of a court of record or before an officer authorized by law to take acknowledgments"); see also *State v. Knight*, 219 Kan. 863, 867, 549 P.2d 1397 (1976) (defining "affidavit" as "a written statement, under oath, sworn to or affirmed by the person making it before some person who has authority to administer an oath or affirmation").

Striking differences become apparent when we compare the language chosen by the legislature in these other statutes with the wording of K.S.A. 2016 Supp. 23-2204. In K.S.A. 2016 Supp. 23-2223 and K.S.A. 59-2114, the legislature explicitly requires the signature be made or acknowledged before a judge or a notarial officer, but 23-2204 and other Kansas statutes relating to the VAP procedure do not. The legislature's inclusion of language explicitly requiring a notarial acknowledgment illustrates that the legislature knows how to impose formality. And its failure to include language mandating a notarial act presents persuasive evidence that the legislature did not believe such a step was necessary when a VAP is executed. See, *e.g.*, *Ambrosier v. Brownback*, 304 Kan. 907, 913-14, 375 P.3d 1007 (2016) (comparing statutes regarding gubernatorial appointments and concluding differences in language were persuasive evidence the legislature intended different treatment).

Finally, Smith makes a number of policy arguments for imposing more stringent requirements for the execution of a document that establishes something as significant as a parent and child relationship. As a matter of policy, many of those arguments are sound. More formality in the acknowledgment process would assure better protection for the man acknowledging paternity, the mother, the child, and others. See 42 U.S.C. § 666(a)(5)(C)(iv) (discussing conditions VAP form must meet before another state must give it full faith and credit). But other policy considerations, including the legislative intent to have a simple process for naming a father, support the statute as currently

14

enacted—without requiring a formal verification or notarization process. Ultimately, such competing "'questions of public policy are for legislative and not judicial determination, and where the legislature does so declare, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.'" *State v. Spencer Gifts*, 304 Kan. 755, 765, 374 P.3d 680 (2016) (quoting *State, ex rel., v. Kansas Turnpike Authority*, 176 Kan. 683, 695, 273 P.2d 198 [1954]); see *Ambrosier*, 304 Kan. at 914 ("Reasonable minds may differ on the wisdom of this policy choice, but the choice is not this court's to make or reform.").

Of course, a legislature's policy choice cannot control if that choice results in a constitutional violation. See *Spencer Gifts*, 304 Kan. at 761. Smith attempts to assert a constitutional impediment by arguing the lack of formality and ease of interfering with a biological father's relationship with his child makes the VAP statutes unconstitutional. But he fails to show how he has standing to assert the arguments regarding a biological father's rights. Moreover, he fails to even specify what constitutional provision is offended or how it is offended. Although he cites some cases, he fails to tie the analysis in those cases to the specific question in this case. Because of this inadequate briefing, Smith has abandoned or waived any potential constitutional arguments. See *State v. Logsdon*, 304 Kan. 3, 29, 371 P.3d 836 (2016).

Simply put, Smith has failed to show how the VAP he signed fails to meet the requirements of Kansas law or fails to comply with the formality required by the statute or approved form. We, therefore, hold that the VAP in this case meets the definition of an acknowledgment of paternity and its form and manner of execution complied with Kansas law. In order to be enforceable, the signatures on a voluntary acknowledgment of paternity, as provided for in K.S.A. 2016 Supp. 23-2204, do not have to be notarized or accompanied by other formalities related to the witnessing of signatures.

2. *Is the VAP enforceable when Smith did not read it?*

Smith also argues the VAP is not enforceable against him because, as the district court specifically found, he had not read the form before signing it. After making this finding, however, the district court noted that "[a] person signing a binding document is bound by its terms in the absence of a showing of duress, coercion, fraud or mistake." The district court further determined Smith had not established duress, coercion, fraud, or mistake and, therefore, his acknowledgment was valid and made Smith obligated to perform the responsibilities he had assumed by signing the form.

The district court relied on a well-established principle in rejecting Smith's argument. See, *e.g., Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194 (1991) ("a party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered into through fraud, undue influence, or mutual mistake"); *In re Habeas Corpus Application of Tolle*, 18 Kan. App. 2d 491, 496, 856 P.2d 944 (1993) (with respect to diversion agreement: "a person is presumed to have read and understood the terms of any agreement he or she has signed and must abide by its terms in the absence of fraud, undue influence, or mutual mistake"). But Smith argues this principle applies to contracts and not to public acknowledgments of paternity, which he contends should be accompanied by a full understanding of the legal obligations inherent in a VAP.

Determining what legal principles apply in a given case generally presents a question of law. See *State v. Reed*, 300 Kan. 494, 509, 332 P.3d 172 (2014). And we hold that the contract principle relied on by the district court applies here because the Kansas

16

Parentage Act treats all agreements to pay child support as a contract presumably supported by consideration.

Specifically, K.S.A. 2016 Supp. 23-2221 provides: "It shall be presumed that there is consideration for any written promise to furnish support for a child, growing out of a presumed or alleged father and child relationship. Such a promise shall be enforceable according to its terms, subject to subsection (d) of K.S.A. 2016 Supp. 23-2209." And K.S.A. 2016 Supp. 23-2209(d) states that an agreement between "an alleged or presumed father and the mother or child does not bar an action under this section"; the section provides procedures for determining the father and child relationship and for revoking a VAP. See K.S.A. 2016 Supp. 23-2209(a), (b), and (e). In this case, Smith's agreement to pay child support is further supported by the consideration of being granted the opportunity to develop a father and child relationship with I.M.S.—a relationship the district court found had developed, at least through the eyes of I.M.S. who saw Smith as his father.

Although K.S.A. 2016 Supp. 23-2221 addresses only consideration, that reference indicates the legislature intended to treat such agreements as contracts. In addition, the VAP bears the hallmarks of other components of a valid contract. First, the VAP form records a person's intent to be bound by the document by requiring initialing of each page and signing the document. Both Smith and Gafford had the right to accept or reject these terms, and both indicated their assent by initialing the pages and signing at the end. Second, the VAP delineates specific and definite duties, including the responsibility to provide support. The form even warned: "If necessary, this duty may be enforced through legal action such as a child support order, an order to pay birth or other medical expenses of the child, or an order to repay government assistance payments of the child's care." Third, K.S.A. 2016 Supp. 23-2221 requires us to presume consideration. In

17

addition, as we have discussed, the record supports consideration by allowing the development of a parent and child relationship. Finally, the document complied with Kansas law. Under these circumstances, we conclude the district court did not err in applying contract law principles. See 1 Williston on Contracts § 3:2 (4th ed. 2007) ("The test for enforceability of an agreement is: (1) whether both or all parties, with the capacity to contract, manifest objectively an intent to be bound by the agreement; (2) whether the essential terms of the agreement are sufficiently definite to be enforced; (3) whether there is consideration; and (4) whether the subject matter of the agreement and its performance are lawful.").

We now turn to whether the district court correctly determined that Smith was bound by the agreement even though he did not read it. To reach this determination, the district court made the factual finding that Smith had not established duress, coercion, fraud, or mistake. "In Kansas, a district court's factual findings are reviewed under the substantial competent evidence standard." *State v. Gonzalez*, 290 Kan. 747, 756, 234 P.3d 1 (2010). Smith does not point to a lack of evidence that supports the district court's finding and has thus abandoned or waived any such argument. See *Logsdon*, 304 Kan. at 29.

We mention another potential barrier to Smith's success on this point: Neither K.S.A. 2016 Supp. 23-2204 nor 23-2209, the provisions dealing with the VAP form, allow an adult party to a VAP to bring a revocation action after 1 year—for any reason. (Different limitations apply to those younger than 18 at the time the acknowledgment is signed.) And Smith, who was more than 18 when he signed the VAP, cites no authority that suggests the 1-year limitation period can be waived or tolled to allow him to file a motion to revoke more than 9 years after I.M.S.'s birth on the grounds he did not understand the implications of his act or have notice of the effect of his act. See *Cesar C.*

18

*v. Alicia L.*, 281 Neb. 979, 985-86, 800 N.W.2d 249 (2011) (under Nebraska law, a VAP becomes a legal finding of paternity after the period for revocation has passed). The State has not presented this argument, and so we do not decide the question in this case; we simply point out the potential issue so future litigants do not imply too much from today's ruling.

Smith's remaining arguments are policy based. And while we note that Kansas law requires less formality than some other states' VAP programs, the legislature has made a policy choice and, applying separation of powers principles, we will not second guess that choice. *Ambrosier*, 304 Kan. at 914; see *Cesar C.*, 281 Neb. at 985-86 (discussing effect of signed and notarized acknowledgment of paternity under Nebraska law).

We, therefore, conclude the VAP was enforceable against Smith even though he had not read it before signing the document.

3. *What is the effect of a signed VAP in this case?*

The Court of Appeals panel did not discuss the validity of the VAP in this case because it gave little weight to Smith's acknowledgment of paternity. The panel began its analysis by noting that the father and child relationship was "'*subject to termination by a court because paternity is a rebuttable presumption under K.S.A. 38-1114*' [now K.S.A. 2016 Supp. 23-2208]." (Emphasis added.) *State ex rel. Secretary of DCF v. Smith*, No. 114,306, 2016 WL 3031277, at *6 (Kan. App. 2016) (unpublished opinion) (quoting *State ex rel. Secretary of SRS v. Kimbrel*, 43 Kan. App. 2d 790, 797, 231 P.3d 576 [2010], *rev. denied* 292 Kan. 966 [2011]). The panel further concluded that a presumption of paternity had been clearly and convincingly rebutted by testimony from both Smith and Gafford that they never had sex. The panel gave conclusive effect to

19

biological paternity and no effect to the signed VAP. 2016 WL 3031277, at *8. In focusing on biology, the Court of Appeals panel relied heavily on an earlier Court of Appeals decision in *Kimbrel*. 2016 WL 3031277, at *6.

In *Kimbrel*, the Court of Appeals panel cited K.S.A. 38-1111 (now K.S.A. 2016 Supp. 23-2205), which states:

> "As used in this act, 'parent and child relationship' means the legal relationship existing between a child and the child's biological or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations. It includes the mother and child relationship and the father and child relationship."

Based on this language, the *Kimbrel* court recognized a "legislative intent to recognize biological lineage as the foundation for the parent-child relationship." *Kimbrel*, 43 Kan. App. 2d at 793.

This court examined the same statutory language in *Frazier v. Goudschaal*, 296 Kan. 730, 295 P.3d 542 (2013), and, in doing so, noted the conflict between K.S.A. 38-1111 and the presumption statute, K.S.A. 38-1114(a) (now K.S.A. 2016 Supp. 23-2208). The *Frazier* court observed that the presumption statute listed six circumstances in which a man is presumed to be the father of a child and that only one of those presumptive circumstances requires proof of a genetic link between the father and the child. In other words, "the parental relationship for a father can be legally established under the [Kansas Parentage Act] without the father actually being a biological or adoptive parent." 296 Kan. at 746; see also *In re Marriage of Ross*, 245 Kan. 591, 602-03, 783 P.2d 331 (1989) (reinstating support, visitation, and custody for marital father even though genetic testing established he was not the biological father).

20

The VAP form sets up a situation by which an individual may become a legal parent even though not a biological or adoptive one. Neither the federal nor the Kansas VAP statutes limit the availability of the VAP procedure to those who are, or reasonably believe themselves to be, biological parents. See 42 U.S.C. § 666(a)(5)(C); K.S.A. 2016 Supp. 23-2204; see also Note, *Voluntary Acknowledgments of Paternity: Should Biology Play a Role in Determining Who Can Be a Legal Father?*, 38 Ind. L. Rev. 479, 481, 490 (2005) ("Title IV-D does not call for the acknowledging man to assert his genetic parentage of the child."). And neither K.S.A. 2016 Supp. 23-2204 nor the Office of Vital Statistics form requires a person who signs the form to make a declaration of biological parenthood of the newborn child. Accordingly, under the VAP procedure enacted by the legislature, genetic testing would not void the VAP or automatically negate the responsibilities of a person who had signed a VAP. Compare *Van Weelde v. Van Weelde*, 110 So. 3d 918, 919-21 (Fla. Dist. App. 2013) (VAP that was not revoked during the statutory period established paternity and father did not commit fraud because Florida's law does not require the person to be named as father be the biological father), with *McGee v. Gonyo*, 2016 VT 8, ¶¶ 2, 19, 140 A.3d 162 (2016) (setting aside a VAP as fraud on the court where "[b]oth parties signed the form, which stated that they 'voluntarily and without coercion, and of our own free will, hereby acknowledge that we are the biological parents of the child.'"). At a minimum, Smith's signature on the VAP gave rise to a presumption of paternity and his denial of being a biological parent set up the possibility of a conflicting presumption that supported his request for genetic testing. See K.S.A. 2016 Supp. 23-2208(a)(5).

That brings us back to the question of whether, under the facts of this case, the VAP procedure created a permanent parent and child relationship or merely created a rebuttable presumption of such a relationship. By focusing on different statutes, the Court of Appeals panel and the district court reached different answers to that question. And

both courts reached those disparate results by applying the language of arguably conflicting statutes. When two statutes conflict or at least create an ambiguity when read together, courts must consider the provisions of the entire act with a view toward reconciling and bringing the various provisions into harmony, if possible. See *In re Marriage of Ross*, 245 Kan. at 594 (when statute is ambiguous, court "may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested," and by giving consideration to every part of the act to the end of reconciling "the different provisions so as to make them consistent, harmonious, and sensible"). Doing so in this case leads us to a different analytical path than that followed by the Court of Appeals panel.

The Court of Appeals reconciled the two provisions by simply stating they were alternatives. *Smith*, 2016 WL 3031277, at *7. But the Court of Appeals did not consider the effect of K.S.A. 2016 Supp. 23-2209, which defines the procedure for establishing a parent and child relationship and, in doing so, indicates a legislative intent for a VAP to permanently bind those who sign the document. It does so, in part, by limiting the parties who may bring an action to revoke the VAP to "the man named as the father [on the VAP form], the mother or the child" and by requiring the action to be filed within "one year after the child's date of birth" if the action is brought by the man or the mother. K.S.A. 2016 Supp. 23-2209(e). Clearly, the legislature intended to impose strict limitations on the two individuals who sign the VAP form. It seems contrary to this intent to allow either of those parties the ability to sidestep the VAP's terms—to effectively seek its revocation—by rebutting a presumption or raising a conflicting presumption, such as would arise through genetic testing, under K.S.A. 2016 Supp. 23-2208(a)(5). See K.S.A. 2016 Supp. 23-2208(c) ("If two or more presumptions under this section arise which conflict with each other, the presumption which on the facts is founded on the weightier

22

considerations of policy and logic, including the best interests of the child, shall control.").

Granted, limiting the remedy available to those who sign a VAP seems inconsistent with K.S.A. 2016 Supp. 23-2209(a), which states that "any person on behalf of . . . a child, may bring an action: (1) At any time to determine the existence of a father and child relationship presumed under K.S.A. 2016 Supp. 23-2208." And the broad word "any" would include the father and the mother. Nevertheless, the more specific provisions regarding the VAP—those found at K.S.A. 2016 Supp. 23-2204 and 23-2209(e)—effectively create an exception to that broad language. See *In re Marriage of Brown*, 295 Kan. 966, 975, 291 P.3d 55 (2012) (specific statutory provisions control over more general). This conclusion is bolstered by considering the context of the statutes creating a permanent relationship.

The specific language about the permanency of the father and child relationship appears only in K.S.A. 2016 Supp. 23-2204, which dictates the requirements of the VAP form. In other words, the legislature imposed this term on those signing the agreement, not necessarily upon those who did not enter into the agreement. In addition, the language imposing the 1-year limitation occurs only in the statute dictating the content of the form, K.S.A. 2016 Supp. 23-2204, and the statute regarding a revocation procedure brought by those who sign the form, K.S.A. 2016 Supp. 23-2209. Reading K.S.A. 2016 Supp. 23-2204 and 23-2209 together, after the child's first birthday, neither the man signing the VAP nor the mother can attempt to revoke the VAP, attempt to obtain a contrary determination of the father and child relationship by rebutting the presumption that arises from the VAP, or attempt to establish the existence of a conflicting presumption through, for example, genetic testing. When a man and a mother sign the form they agree and

23

acknowledge that the VAP creates a "permanent father and child relationship." K.S.A. 2016 Supp. 23-2204.

Others acting on behalf of the child, including a biological father, could not use K.S.A. 2016 Supp. 23-2209(e) to attack the validity of the VAP, and that subsection's 1-year limitation period would not apply. Moreover, that person is not a party to the VAP, which means that person has not agreed to the VAP's terms, including the term creating the permanent relationship. Those statutes do not foreclose others acting on behalf of the child using other procedures and seeking other remedies available under the Kansas Parentage Act, including raising a competing presumption under K.S.A. 2016 Supp. 23-2208.

Reading the various provisions of the Kansas Parentage Act in this manner is consistent with the purpose of the VAP program and gives meaning to all statutory provisions regarding the VAP form. Under this synthesis, Smith cannot seek to revoke his VAP because his effort is time-barred under K.S.A. 2016 Supp. 23-2204 and 23-2209. Smith cannot now revoke the VAP and may not attack it by using K.S.A. 2016 Supp. 23-2208 to declare his relationship as merely presumptive fatherhood.

4. *Is remand necessary?*

Smith makes two additional arguments. First, he argues the district court erred when it determined it did not need to conduct a separate *Ross* hearing to determine the best interests of the child. Kansas public policy "requires our courts to act in the best interests of the children when determining the legal obligations to be imposed and the rights to be conferred in the" parent and child relationship. *Frazier*, 296 Kan. at 747. In cases involving genetic challenges to paternity, this court requires district courts to

24

conduct a *Ross* hearing to determine whether genetic testing is in the best interests of the child before ordering such testing occur. *In re Marriage of Ross*, 245 Kan. at 602. And when conflicting presumptions arise, a court must consider which of the two presumptions "is founded on the weightier considerations of policy and logic, including the best interests of the child." K.S.A. 2016 Supp. 23-2208(c).

Under our reading of the Kansas Parentage Act, a question arises as to whether *Ross* applies to this case. But we set that threshold legal issue aside because the parties do not fully argue it and we need not decide the question on the record before us, which includes the district court's *Ross* determination.

Smith admits the parties requested a *Ross* hearing, the pretrial order contained the issues under *Ross*, and some evidence of the child's best interests was presented at the evidentiary hearing. Nevertheless, he argues the district court did not actually decide the *Ross* issue or at least did not make sufficient findings.

The record reveals, however, that the district court twice held hearings in this matter in which it determined the best interests of the child. Smith presents no authority supporting his suggestion a separate hearing had to be conducted. Moreover, the district court made specific findings and determined I.M.S.'s interests were best served by continuing the father and child relationship with Smith. When an appellate court reviews that determination, it recognizes that "'[t]he trial court is in the best position to make the inquiry and determination [regarding the welfare and best interests of the child], and in the absence of abuse of sound judicial discretion, its judgment will not be disturbed on appeal.'" *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011). Our abuse of discretion standard is well known:

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

Here, the record supports the district court findings. The guardian ad litem had interviewed I.M.S. and had determined that it was in the best interests of the child to conclude that Smith was I.M.S.'s legal father. Significantly, the guardian ad litem and Gafford both stated that I.M.S. recognized Smith as his father. The district court also noted Sanders' death. In light of that evidence, we have no hesitation in concluding that reasonable people would agree that continuing the relationship with the man I.M.S. recognized as his father was in I.M.S.'s best interest, that the district court applied the correct legal standard, and that substantial competent evidence supports the district court's conclusion.

As to Smith's second remaining argument, he urges us to conclude that the district court erred in failing to add Sanders' estate as a party. Smith wanted the presence of the estate in order to establish a father and child relationship between Sanders and I.M.S. But Smith could only achieve that goal if he could revoke the VAP, rebut the presumption of paternity, or set up a conflicting presumption. The Kansas Parentage Act does not allow him to do any of those things. Accordingly, Sanders' estate did not need to be a party to this action, and the district court did not err.

CONCLUSION

We strongly urge the legislature to review the Kansas Parentage Act provisions with a view toward clarifying the Act's various ambiguities, especially in those provisions we are unable to fully reconcile. Nevertheless, applying the principles we have discussed, we conclude legislative intent requires us to enforce the VAP against Smith.

We affirm the district court's decision enforcing the VAP and reverse the Court of Appeals.