NOT DESIGNATED FOR PUBLICATION

No. 116,990

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZACHARY J. ORTIZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed June 8, 2018. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and STUTZMAN, S.J.

PER CURIAM: Zachary Ortiz appeals his conviction of aggravated assault of a law enforcement officer. He argues that (1) the district court erred by refusing to give a unanimity instruction to the jury; (2) the district court erred by failing to hold a hearing on his motion for investigative services; and (3) cumulative error warrants reversal of his conviction. For the reasons stated herein, we affirm the district court's judgment.

The facts are undisputed. Around midnight on June 22, 2014, a Lawrence resident called 911 to report the sound of gunshots. Officer Skyler Richardson responded to the

1

call and the caller pointed Richardson to a house on the corner of the street. A man outside the house—Ortiz' father—told Richardson that his son was drunk inside the house. Richardson asked Ortiz' father if he could see his son to make sure he was safe. Ortiz' father agreed and led Richardson through the garage and into the house.

When Richardson entered the house, Ortiz was in the living room holding either a baseball bat or golf club over his head. Richardson believed Ortiz was about to strike his father with the object, so he drew his gun and announced that he was a police officer. Richardson told Ortiz to drop the object or he would be tased or shot. Ignoring the order, Ortiz ran into his bedroom in the back of the house and his father ran after him. Richardson exchanged his gun for a taser and followed.

Ortiz' bedroom was above a short set of stairs. When Richardson reached the bottom of the stairs, he saw Ortiz pointing a shotgun in his direction. Richardson continued up the stairs to get out of the line of sight, told Ortiz' father to get behind him, and exchanged his taser for his gun. Richardson then caught a glimpse of Ortiz loading the shotgun. At that point, Richardson stepped into the room and shot Ortiz four times.

Ortiz survived and the State charged him with aggravated assault of a law enforcement officer. Ortiz hired his own attorney, but he filed a motion with the district court seeking to be declared partially indigent so he could receive funds for expert and investigative services. The motion did not specify the nature of the investigative services Ortiz was seeking or why the services were necessary to prepare his defense. The district court denied the motion without holding a hearing, deciding that if Ortiz wished to be found partially indigent he would need to receive court appointed counsel.

Ortiz' case proceeded to a jury trial. At the conclusion of the evidence, Ortiz requested a unanimity instruction which the district court denied, finding that the case did

not involve multiple acts. The jury found Ortiz guilty of aggravated assault of a law enforcement officer. Ortiz timely appealed his conviction.

Ortiz first argues that the district court committed reversible error by refusing to give a unanimity instruction to the jury. He argues that the jury could have relied on two separate acts to convict him of aggravated assault of a law enforcement officer: (1) pointing the shotgun at Officer Richardson; and (2) loading the shotgun. Ortiz claims that without a unanimity instruction, it is unclear which act the jury relied on to convict him of the charge, denying Ortiz his right to a unanimous verdict.

The State asserts that the district court did not need to provide a unanimity instruction to the jury because Ortiz' conduct leading to the charge did not consist of multiple acts. In the alternative, the State argues that any error in failing to give a unanimity instruction was harmless.

Under Kansas law, a defendant is entitled to a unanimous jury verdict. K.S.A. 22-3421; *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). When a case involves multiple acts, any one of which could constitute the crime charged, the jury must be unanimous in finding which specific act constitutes the crime. See *State v. De La Torre*, 300 Kan. 591, 595, 331 P.3d 815 (2014). To ensure jury unanimity in these cases (known as multiple acts cases), the State must elect which act it is relying upon for the charge, or the court must instruct the jury that it must unanimously agree on the specific act constituting the crime charged. *State v. Akins*, 298 Kan. 592, 618, 315 P.3d 868 (2014); *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007).

A court follows a three-part test when analyzing multiple acts cases. *State v. King*, 297 Kan. 955, 979, 305 P.3d 641 (2013). First, it must determine whether the case

3

involves multiple acts or a unified course of conduct. 297 Kan. at 979. This is a question of law over which an appellate court exercises unlimited review. *Santos-Vega*, 299 Kan. at 18. If the court finds the defendant's conduct was unitary, then the analysis ends and the district court is affirmed. See *Voyles*, 284 Kan. at 244. If, however, the court decides multiple acts were involved, the next question is whether error was committed because either the district court failed to instruct the jury to agree on the specific act for each charge or the State failed to inform the jury which act to rely upon during its deliberations. *King*, 297 Kan. at 979. Finally, if error was committed, the appellate court must determine whether the error was harmless. 297 Kan. at 979.

Proceeding to the first step, we must decide whether Ortiz' acts involved multiple acts or unitary conduct. "Multiple acts" are legally and factually separate incidents that independently satisfy the elements of the charged offense. See *King*, 299 Kan. at 980; *State v. Soto*, 299 Kan. 102, 111, 322 P.3d 334 (2014). "The threshold question in a multiple acts analysis is whether defendant's conduct is part of one act or represents multiple acts which are separate and distinct from each other." *State v. Kesselring*, 279 Kan. 671, 682, 112 P.3d 175 (2005). Incidents are factually separate when independent criminal acts occurred at different times or different locations, or when a criminal act is motivated by a fresh impulse or interrupted by an intervening event. *King*, 297 Kan. at 981 (quoting *State v. Schoonover*, 281 Kan. 453, 507, 133 P.3d 48 [2006]).

To convict Ortiz of aggravated assault of a law enforcement officer, the jury was instructed that it must find that Ortiz knowingly used his shotgun to place Richardson—a Lawrence police officer acting in the line of duty—in reasonable fear of immediate bodily harm. Ortiz claims that two separate acts could have fulfilled these elements—pointing the shotgun at Richardson and loading the shotgun. Ortiz points to the fact that the State spoke of the two acts separately throughout the trial to support his claim that the acts are separate and distinct.

4

In *Kesselring*, the defendant appealed his conviction of aggravated kidnapping, arguing that the jury should have received a unanimity instruction. He claimed there were multiple acts that could have constituted the crime—one when he took the victim to the car, one when the victim ran away and was taken back to the car by gunpoint, and another when the victim was forced out of the car. Our Supreme Court decided that the defendant's acts were part of a continuous incident that could not be factually separated, and "the fact that [the victim] was momentarily free when he attempted to escape was not a sufficient interruption to say that a new criminal impulse or new act of kidnapping had occurred." 279 Kan. at 683.

Here, Ortiz' acts are best characterized as part of a continuous incident rather than legally and factually separate criminal acts. Ortiz pointed the shotgun at Richardson and loaded the shotgun in a brief period of time, and both acts occurred at the same location. The facts do not indicate that Ortiz' motivation ever changed or that he was interrupted by any kind of intervening event.

Ortiz suggests that he had a separate criminal impulse for each act. He argues that he could have believed that Richardson was an intruder and that he needed to point the shotgun at the intruder to scare him away. Then, when the intruder followed him up the stairs, Ortiz had a fresh impulse to use actual force and loaded the shotgun. But this argument is unsupported by the trial evidence. Richardson testified that he announced to Ortiz that he was a Lawrence police officer as soon as he entered the home. There was no evidence to suggest that Ortiz believed Richardson was an intruder.

To sum up, this is not a multiple acts case. Ortiz' conduct of pointing a shotgun at Richardson and then loading the shotgun were not separate multiple acts requiring a unanimity instruction. Because the district court did not err by refusing to give a unanimity instruction to the jury, we need not assess whether the error was harmless.

Next, Ortiz argues that the district court committed reversible error by failing to hold a hearing on his motion for investigative services. The State argues that the district court was entitled to summarily deny Ortiz' motion for investigative services, but even if any error occurred, it was harmless and did not affect the outcome of the trial.

Resolution of this issue requires interpretation of a Kansas statute—K.S.A. 22-4508. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Under K.S.A. 22-4508, an attorney for a criminal defendant who cannot afford investigative or expert services for trial may request funding from the court:

> "An attorney other than a public defender who acts as counsel for a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in the defendant's case may request them in an *ex parte* application addressed to the district court where the action is pending. Upon finding, after appropriate inquiry in the *ex parte* proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the district court shall authorize counsel to obtain the services on behalf of the defendant." K.S.A. 22-4508.

Ortiz was represented at trial by retained counsel—that is, an attorney who was neither a public defender nor court appointed. Ortiz' attorney filed a motion with the district court seeking funds for expert and investigative services under K.S.A. 22-4508. The motion did not specify the nature of the investigative services Ortiz was seeking or why the services were necessary to prepare his defense.

The district court summarily denied Ortiz' motion, relying on *Morrow v. State*, 18 Kan. App. 2d 236, 849 P.2d 1004 (1993). In that case, Morrow sought assistance from

6

the State to obtain transcripts for his appeal. Although Morrow paid for retained counsel at trial, he filed a motion with this court claiming that he was unable to afford the cost of obtaining trial transcripts. Denying Morrow's motion, this court noted that "an indigent defendant cannot retain counsel of his own choosing and then ask for the State to pay expenses." 18 Kan. App. 2d at 242-43.

The district court applied the reasoning in *Morrow* to conclude that Ortiz could not obtain State funds for investigative services under K.S.A. 22-4508 while paying for retained counsel. But our Supreme Court recently distinguished *Morrow* in *Landrum v. Goering*, 306 Kan. 867, 397 P.3d 1181 (2017), finding that defendants with retained counsel may obtain funding for investigative services through K.S.A. 22-4508. The *Landrum* court stated: "[A] district court has a duty under K.S.A. 22-4508 to conduct an ex parte hearing when an attorney other than a public defender, including an attorney employed by the defendant, asks the court to consider a defendant's request for investigative, expert, or other services." 306 Kan. at 874.

Here, Ortiz was represented by retained counsel, and he filed a motion seeking to obtain funding for investigative services. Based on *Landrum*, the district court had a duty to conduct a hearing to determine (1) whether Ortiz was financially unable to pay for the services, and (2) and whether the services were necessary for his defense. The district court erred by denying Ortiz' motion for investigative services without holding a hearing.

The State suggests that any error to provide a hearing was harmless. Funding for investigative and expert services to partially indigent defendants is provided by statute in Kansas, but those services are not a constitutional right. When an error implicates a statutory but not federal constitutional right, the party benefitting from the error must persuade the court that there is no reasonable probability that the error affected the trial's outcome in light of the entire record for it to be deemed harmless. *State v. McCullough*, 293 Kan. 970, 981-83, 270 P.3d 1142 (2012).

7

Here, the State presented a strong case against Ortiz—Richardson testified at trial about the events of the night in question, a forensic scientist testified that Ortiz' DNA was on the shotgun, and the State presented photographs of shotgun shells in Ortiz' bedroom. Ortiz' defense at trial was that Richardson overreacted to the situation and could not have seen Ortiz pointing a shotgun before Richardson entered the bedroom and fired shots from his weapon. There is no indication in the record that investigative services would have helped Ortiz' case or supported his defense; in fact, Ortiz does not even state what investigative services he was requesting. The motion did not specify the nature of the investigative services Ortiz was seeking or why the services were necessary to prepare his defense. We conclude there is no reasonable probability that the district court's error—denying the motion for investigative services without holding a hearing—affected the outcome of Ortiz' trial in light of the entire record, and any error was harmless.

## CUMULATIVE ERROR

Finally, Ortiz argues that the cumulative effect of multiple trial errors denied him a fair trial. For cumulative error, the test is whether the totality of the circumstances establish that the defendant was substantially prejudiced by all the trial errors and was denied a fair trial. In assessing the cumulative effect of the trial errors, the appellate court examines the errors in the context of the entire record, considering how the district court dealt with the errors, the nature and number of errors, and the overall strength of evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). Logically, a single error cannot constitute cumulative error. *State v. Waller*, 299 Kan. 707, 728, 328 P.3d 1111 (2014). Because there was only one error here—failure to hold a hearing for investigative services—there cannot be cumulative error.

Affirmed.